## TOWN OF AFTON et al. v. GILL.

No. 7588.    Opinion Filed March 28, 1916.

(156 Pac. 658.)

1.   MUNICIPAL CORPORATIONS—Public Improvements—Assessment—Constitutional and Statutory Provisions.   Section 464 of the Code (Rev. Laws 1910), directing that lateral sewers be paid for by the abutting property owners, is not in conflict with section 27, article 10, of the Constitution.

2.   SAME—Bonds—Injunction.   Where it is shown that funds derived from the sale of bonds about to be issued will be devoted to unlawful purposes, and where it is further shown that said funds may not properly be applied to the purposes for which they were voted, the issuance of the bonds will be enjoined.

3.   INJUNCTION—Subjects of Relief—Discretionary Acts.   Although a court of equity will not interfere to control the exercise of the discretion of a board upon a subject within its power, a court of equity will enjoin such board from attempting to do a wrongful act which is entirely outside of the limits of the discretion so confided.

4.   MUNICIPAL CORPORATIONS—Bonds—Injunction—Interest of Taxpayer.   A resident taxpayer, although he shows no special interest, may maintain a suit to enjoin the issuance of bonds under the circumstances set out in paragraph 2 of the syllabus.

(Syllabus by Burford. C.)

*Error from District Court, Ottawa County;
Preston S. Davis, Judge.*

Suit by H. R. Gill against the Town of Afton and others.   From a judgment for plaintiff, defendants appeal.   Affirmed.

*Geo. P. Glaze,* for plaintiffs in error.

*S. C. Fullerton,* for defendant in error.

Opinion by BURFORD, C.   This case, in its final sense, is a suit by a taxpayer and property holder of the town of Afton to enjoin the issuance and delivery of a

certain portion of an issue of negotiable coupon bonds of the town of Afton, due in 25 years, which bonds had been regularly and lawfully voted for the construction of a sanitary sewer system. The injunction was sought and granted in the district court upon the ground that it was intended by the town officers to expend the funds derived from the sale of the portion of the bonds, the issuance of which was enjoined, to the building of what were called submain sewers, but which were, in reality, lateral sewers, and further, to expend a portion of said funds for the improvement of the city water plant. These allegations were proved to the satisfaction of the district judge, and the finding in that regard, after an examination of the evidence, we very readily and heartily approve. A temporary injunction was issued, and from such order an appeal has been prosecuted to this court.

Section 464 of the Code (Rev. Laws 1910) requires lateral sewers to be paid for by the abutting property owners, while main and submain sewers are, as a general rule, to be paid for by the public. The Constitution (section 27, art. 10) permits municipalities, by a vote of the qualified taxpaying voters, to become indebted for the purpose of "purchasing or constructing public utilities to be owned exclusively by said city." It is urged by the plaintiffs in error that, inasmuch as a sewer system is a public utility, as heretofore held by this court (*State ex rel. Edwards v. Millar*, 21 Okla. 448, 96 Pac. 747), the laterals are a part of the system, and both main and lateral sewers are to be paid for by the public, and that the act of the Legislature is void. This court has held that section 27, art. 10, of the Constitution is a self-executing grant of power to the qualified taxpaying voters of the

municipality voting at a proper election. Being such, the Legislature has no power to improperly limit or abridge the grant. However, the Constitution does not define what shall be a public utility. This court has, in numerous cases, considered the term (*State ex rel. Edwards v. Millar, supra; State v. Barnes,* 22 Okla. 192, 97 Pac. 997; *Barnes v. Hill,* 23 Okla. 207, 99 Pac. 927; *City of Ardmore v. State,* 24 Okla. 862, 104 Pac. 913; *Coleman v. Frame,* 26 Okla. 193, 109 Pac. 928, 31 L. R. A. [N. S.] 556; *Hooper v. State,* 26 Okla. 646, 110 Pac. 912; *Dingman v. City of Sapulpa,* 27 Okla. 116, 111 Pac. 319; *Oklahoma City v. State ex rel.,* 28 Okla. 780, 115 Pac. 1108), and has in these cases generally held that what was comprehended by section 27, art. 10, of the Constitution, was some utility owned exclusively by the municipality, and which was devoted generally to the public use. Now, although sanitary sewers are a public utility within the meaning of this section (*State ex rel. Edwards v. Millar, supra*), it may well be that the sewer system referred to in *State ex rel. Edwards v. Millar, supra,* comprehends only the main and submain sewers, which are devoted to the general use of the public, while the laterals, which are devoted more or less to the private use of a few abutting property owners, are not comprehended within the term "public utility." The act of the Legislature should be upheld, if it can be so construed as to be consistent with the Constitution. There being no definition of public utility in the Constitution, we hold that section 464 of the Code was not intended to require a public utility to be paid for by the abutting property owners, but that it stands as a legislative definition to the effect that a lateral sewer is not a "public utility" within the meaning of the term as

employed in the section of the Constitution above referred
to. In this view the act is not, therefore, void.

Such being the case, there can be no doubt that if
the town of Afton intended to apply the money arising
from the sale of bonds for the construction of a public
utility to a private or unauthorized use, such improper
diversion of the funds might have been enjoined. The
question arises, however, as to whether or not the issu-
ance of the bonds in such case may be enjoined, or
whether the remedy is confined to enjoining the unlawful
disposition of the fund after the bonds are issued. Courts
of equity may be depended upon not to abuse their own
power. Each case must stand upon its own facts. The
evidence, as so far adduced in the case at bar, tended to
show that the $17,500 in bonds, the issuance of which was
permitted by the district judge, was amply sufficient for
the construction of all the actual main and submain sew-
ers, the construction of which was in contemplation by the
city authorities. If this is true, there could be no
use whatever for the funds to be derived from the sale of
the remaining portions of the bonds, except the unlawful
use of paying for a lateral sewer under the guise of mains
and submains and improving the water plant. It is ap-
parent that there may be cases in which, although an in-
tended diversion of the proceeds is proved, the issuance of
the bonds will not be enjoined. Such a case was *City of
Tampa v. Salmonson*, 35 Fla. 446-486, 17 South. 581. In
that case, as in this, the bonds were lawfully voted. It
was alleged and proved, however, that the funds to be
derived from the sale of the bonds were intended to be
administered by a board of trustees, and that the creation
of such board of trustees for such purpose was unlawful.

The court held, however, that the issuance of the bonds was not to be enjoined, inasmuch as the money might be devoted to the proper purposes, for which the bonds were voted, but that improper persons might be enjoined from expending it, and the proper board required to supervise its disbursement.

In *State of Kansas ex rel. v. Clay Center*, 76 Kan. 366, 91 Pac. 91, the municipality had voted funds for the construction of an electric light plant. It was sought to be proved that the city officials intended to divert the money, but the court held that nevertheless the issuance of the bonds would not be enjoined, as it was lawful to issue them to build a light plant, and that if there were an attempted misappropriation, the courts would then interfere. In that case there was nothing to show that the funds derived from the sale of the bonds might not be properly and advantageously used for the original purpose for which the bonds were voted. In the case at bar, however, so far as the record now shows, the funds to be derived from the bonds in excess of $17,500 could be devoted to no other purpose than the misappropriation alleged. They are not necessary for the construction of the utility for which the people voted them. If it should appear otherwise upon the final hearing, the facts might justify a different order, but as the record now stands, it appears both inequitable and unjust that we should say that there is no power to enjoin the issuance of the bonds, but that they ought to be issued and a debt created which will bear interest for 25 years, and that then upon proper application we will enjoin the spending of the money for the only object for which the officers intend it—to build lateral sewers—and require that money to lie in the city treasury

until the bonds become due, probably at a smaller rate of interest than the bonds themselves bear. It would further seem that in a case of this sort, where the question of the possible proper application of the proceeds of the bonds does not arise, a person who seeks to enjoin the issuance of the bonds, before the rights of innocent holders intervene, ought to have as good or better standing in a court of equity than one who seeks to enjoin the levy of a tax to pay the bonds after they are issued.

In *Bates v. City of Hastings*, 145 Mich. 574, 108 N. W. 1005, the court had under consideration a taxpayer's bill to enjoin the issuance of bonds, where it was shown that the municipal officers intended to use the money which had been voted for public purposes to the payment of a bonus to induce manufacturing interests to locate in the city. The court said:

"A bill by a taxpayer against the officers of a municipality to restrain the illegal expenditure of public funds, raised by the sale of bonds issued pursuant to proceedings regular on their face, is not prematurely filed, though no illegal act is shown to have been done by the defendants, since the issuance of the bonds would create a valid municipal debt complainant could not evade, and his only remedy would be the possibility of intervention between the receipt of the money by the defendants and its disposition as contemplated."

It is alleged in this case, as in that one, that the town authorities contemplated immediately issuing and delivering the negotiable bonds, and that the complainant, as a taxpayer and property owner, would be required to participate in the raising of the funds for the payment of the interest and principal of said bonds. The court, in *Bates v. City of Hastings, supra,* said:

"The situation in the case at bar is the same if, in fact, the money derived from the sale of the bonds is to be appropriated to private purposes, as charged in the bill of complaint. If these bonds were once negotiated, and a debt against the city created, it is too late for the taxpayer to be protected, unless he could possibly intervene between the receipt of the money by the city authorities and its disposition as it is charged in the bill of complaint is contemplated. The court is not asked to enjoin the sale or negotiation of the bonds, nor the use of the proceeds, for any of the purposes contemplated by the language of the resolution. I am of the opinion that, taking as true allegations of the bill of complaint, the injunction asked is timely and is not premature."

In the case at bar, the order of the court, in part, reads:

"That the said town of Afton, its officers, agents and employees be, and are hereby, temporarily enjoined * * * from issuing, negotiating, or selling, or offering for sale, any part of the bonds voted on as aforesaid, to raise funds with which to install sewers, called submains in the plans, profiles and specifications adopted by the board of trustees of said town, as aforesaid, estimated to cost, including engineering fee, the sum of $16,864.52."

The town and its officers are also temporarily enjoined from issuing any portion of the bonds "for the purpose of installing, or causing to be installed, in the waterworks of said town new pumps," etc. The order finally enjoins the issuance of any of the bonds of the town, so voted as aforesaid, except the sum of $17,500. Upon the facts of this case we are of the opinion that so much of the order of the trial court as restrained the issuance of the bonds for the purpose of devoting the money so derived therefrom to the construction of the so-called submain sewers, which were in fact laterals, and

the installation of the pumps, etc., at a cost of $4,000, was proper, and if, upon the final hearing, it should appear that the funds in excess of the $17,500 are intended only for the construction of the lateral sewers and the erection of the pumps above referred to, and are not to be used in the proper construction of actual main or submain sewers, then we are of the opinion that the issuance of the bonds in excess of $17,500 may be enjoined, inasmuch as it will then appear that the issuance of that much of the bonds is not necessary or proper for the purposes for which they were voted.

It is further urged that the construction of these sewers and the determination of whether or not they were main or lateral sewers was a matter confided to the discretion of the town board, and its discretion might not be interfered with by a court of equity. It is elementary that where a board is intrusted with discretionary power to do or not to do certain things, the exercise of that discretion in good faith will not be interfered with by the courts, and it is equally as elementary that where a board attempts to do something which they have no power to do, or to spend money confided to their care for purposes not contemplated in the authority given them, the courts will interfere, and will prevent such board from doing an unlawful act which is beyond the bounds of the discretion which they are authorized to exercise.

It is finally urged that the plaintiff, as a taxpayer, had no authority or right to maintain this action. In *Kellogg v. School District No. 13,* 13 Okla. 285, 75 Pac. 110, this court said:

"A resident taxpayer, although he shows no special private interest, may invoke the interposition of a court of

equity to prevent an illegal disposition of the money of the municipality or the illegal creation of a debt which he, in common with other property owners, may otherwise be compelled to pay."

This case has been frequently cited in the later adjudications of this court.

In *Thompson v. Haskell,* 24 Okla. 70, 108 Pac. 700, this court made the limitation of the rule clear. It was there held that the rule does not permit private individuals to restrain public officials to correct purely public wrongs, but restricts the right of a private individual to that class of cases which involves the creation of debts illegally against, or the wrongful expenditure of the moneys of, the taxpayers.

In *City of El Reno v. Cleveland-Trinidad Paving Co.,* 25 Okla. 655, 107 Pac. 163, 27 L. R. A. (N. S.) 650, this court again held that a resident taxpayer, although he showed no special private interest, might bring an injunction to prevent the unlawful disposition of the money of the municipality. See, also, *Sexton v. Smith,* 32 Okla. 441, 122 Pac. 686; *Perry v. Lobsitz,* 35 Okla. 582, 130 Pac. 919, 45 L. R. A. (N. S.) 368; *Dolezal v. Bostick,* 41 Okla. 751, 139 Pac. 964; *Farrimond v. School Dist.,* 25 Okla. 707, 108 Pac. 371; *Greer et al. v. Austin,* 40 Okla. 114, 136 Pac. 590, 51 L. R. A. (N. S.) 336. In *Marlow v. School Dist.,* 29 Okla. 305, 116 Pac. 797, this court held that a resident taxpayer, although he had no special interest, might invoke the powers of a court of equity, not only to restrain the illegal expenditure of public funds, but to restrain the issuance of bonds in excess of the debt limit. In this case the order restraining the issuance of the bonds is in reality a timely interposition of a court of equity to pre-

vent the unlawful disposition of the public funds. As such it is clear that a resident taxpayer may maintain an action.

Finding no error in the record, the order of the trial court should be affirmed.

By the Court: It is so ordered.