### PINE et al. v. BAKER et al.

### In re ROAD CONSTRUCTION, OKMULGEE COUNTY.

Nos. 10351 and 10097—Opinion Filed Oct. 7, 1919.

(Syllabus by the Court.)

**1. Highways—Construction—Estimate.**

The estimate provided for in section 1, c. 28, Session Laws 1916, in relation to constructing permanent roads should be an itemized statement of the cost of said road, and filed with the county clerk with the plans and specifications.

**2. Same — Contract—Exceeding Estimate—Injunction.**

Section 1, c. 28, Session Laws of 1916, provides: "No contracts shall be made by the board of county commissioners at a price exceeding the estimate made and approved by the consulting engineer." Where the only estimate prepared estimates the cost of the grading and the paving separately upon each section of road to be built and constructed, and the combined contracts for the grading and paving of each section of the road exceed the total cost as contained in the estimate for said grading and paving, the enforcement of said contracts for each section which exceed the gross estimate of said section will be enjoined.

**3. Same—Bonds—Use of Proceeds.**

Where bonds are voted by a county to build permanent roads, the proceeds cannot be used by the county to simply grade roads, but must be used for the purpose of constructing permanent roads, and for no other purpose.

**4. Same—Permanent Roads Defined.**

Section 6, c. 30, Session Laws of 1916, defines permanent roads as follows: "Permanent roads are defined to mean roads surfaced with crushed rock, gravel, macadam, brick, concrete, asphalt-macadam, or any other hard surfacing material."

**5. Same—Contracts—Validity—Injunction.**

In an action by certain taxpayers to enjoin the county treasurer from paying out funds derived from the sale of road bonds, and to declare certain contracts entered into by the county commissioners for the construction of certain roads illegal and void, for the reason that no estimate had ever been prepared and filed as provided by law, where upon the trial of the case it is shown that contracts for the construction of the road were entered into on December 20, 1917, and that no estimate was filed with the county clerk, but the testimony of the county clerk was that some time in January, 1918, one of the county commissioners gave to the county clerk what purported to be an estimate of the cost of said work, though not itemized, nor approved by said consulting engineer, which statement or purported estimate had never been marked filed by the clerk, and the evidence in the case discloses that the contracts entered into by the county commissioners are in excess of the purported estimate, the same being the only estimate that was in existence, held, said contracts are in violation of section 1, c. 28, Session Laws 1916, and the enforcement of the same will be enjoined.

Error from District Court, Okmulgee County; R. W. Higgins, Assigned Judge.

Appeal by W. B. Pine and others in highway proceedings. From judgment dismissing

the appeal the appellants bring error. Reversed and remanded.

Frank F. Lamb, A. L. Beckett, G. R. Horner, W. M. Matthews, George James, Fred M. Carter, C. B. McCrory, and W. A. Hiatt, for plaintiffs in error.

L. A. Wallace, W. W. Witten, Carter & Dickson, R. B. F. Hummer, Jas. M. Head, and G. A. Paul, for defendants in error.

McNEILL, J. This controversy involves certain proceedings of the board of county commissioners of Okmulgee county, where contracts were entered into by the county commissioners to build certain permanent roads.

In November, 1916, a bond election was held in Okmulgee county. The question submitted was, should the county commissioners issue bonds in the sum of $800,000 to build and construct 118 miles of permanent roads? The election resulted in authorizing the issuance of said bonds. Thereafter the bonds were issued and sold or contracted for.

The firm of Harrington, Howard & Ash of Kansas City were employed as consulting engineers to prepare surveys, estimates, plans and specifications. Thereafter certain purported plans and specifications of said improvement were prepared and filed with the county clerk.

According to the plans and specifications, the highway to be improved was to be 18 feet wide and the pavement was to have a base eight inches thick. The plans and specifications divided the 118 miles of road into 19 separate and distinct sections or divisions. Each section was designated by a certain number. The county commissioners advertised for bids for each section separately, but provided the bidder might include as many sections as he desired in one bid. Bids were submitted to the board of county commissioners on December 17, 1917. Several bids were filed and the board of county commissioners on December 20, 1917, awarded the contract for grading 16 sections of said highway to the J. J. Harrison Construction Company, and three sections to S. P. Romans. The paving contract for ten sections of the highway, or about 60 miles of the same, was awarded to the Western Paving Company. No contract was entered into for the paving of the remaining nine sections of said road. The county commissioners awarded the contracts on each section of the road separately, and embraced in one contract the several sections of road awarded to each successful bidder.

After the county commissioners had entered into said contract certain citizens and taxpayers filed a notice with the county attorney demanding that he appeal to the district court from the action of the board of county commissioners in awarding said contracts. The county attorney refused to appeal, and the citizens perfected said appeal themselves. In the district court, the county attorney filed a motion to dismiss the appeal, which motion was sustained. From the judgment dismissing said appeal, an appeal was taken to this court by the citizens and taxpayers.

Thereafter the citizens and taxpayers instituted an action alleging that the contracts were fraudulent, and also set out numerous irregularities, alleging that by reason of said irregularities the county commissioners acquired no jurisdiction to enter into said contracts, and by reason of said irregularities the contracts were null and void, and asked that the county treasurer be enjoined from paying out money on said contracts and the enforcement of the contracts also be enjoined.

On the trial of the case in the district court the injunction was denied and the petition dismissed, and from said judgment plaintiffs appealed. By agreement of the parties the two cases have been consolidated and briefed and argued as one case. For grounds of reversal, the plaintiffs allege numerous assignments of error.

Among the assignments of error briefed by plaintiffs in error is the following:

"Where the law prescribes the mode which the board of county commissioners must pursue in the exercise of all the powers granted them, it excludes all other methods of procedure."

Under this assignment of error plaintiffs rely upon the following reasons for a reversal:

First: That no estimate was prepared and filed with the county clerk as required by law. In the petition the plaintiffs charge the following:

"That the board of county commissioners failed to require from the county engineer or proper officials and the county engineer failed to perform his duties in making a preliminary survey of the proposed roads to be improved or of the work of paving to be done thereon or to make and file with the county clerk an estimate of the costs in the manner as required by law of the proposed grading or improvements, all of which is essential and required by law prior to the exercise of any authority upon the part of the board to the letting of any contract or contracts, for the grading or building of permanent roads with the proceeds of bonds."

The section of the statute relating to the

estimate, plans and specifications is section 1, c. 28, Session Laws 1916, and is as follows :

"It shall be the duty of such consulting engineer to supervise the making of all surveys, estimates, plans and specifications for the improvement proposed, and no money shall be paid out on such improvement until such consulting engineer shall have first inspected and approved the items as conforming to the requirements set forth in the adopted plans and specifications, which shall be of record as provided by law."

"No contracts shall be let by the board of county commissioners at a price exceeding the estimate made and approved by the consulting engineer * * *."

It is the contention of the plaintiffs in error that no estimate was ever made and filed with the county clerk as provided by law, and therefore the proceedings and contracts made thereunder are void.

As to whether any estimate of the cost of this improvement was ever filed with the county clerk, the record is not clear. The county clerk testified that one of the county commissioners, to wit, Mr. Hart, some time in January, 1918, after the contracts were entered into gave her an instrument which was marked as Exhibit 4 and designated as "calculations for summary cost of Okmulgee county roads." This exhibit is copied on the letter head of Harrington, Howard & Ash, consulting engineers, and is as follows:

"Harrington, Howard & Ash, Consulting Engineers, Kansas City, Mo.

"Made by H. G. H. Date, Nov. 1917. Job No._____. Checked by_____ Date_____ Sec. No._____ Back checked by_____ Date_____ Sheet No._____

Calculations for Summary of Costs, Okmulgee County Roads.

Cost of Pavement 18' Wide.

| Road Section | Grading Cost | Bit. Macadam | Permanent Type |
|---|---|---|---|
| No. 1_____ | $20,205 | $141,840 | $169,420" |

The exhibit then continues with 19 different sections of road, and opposite each particular section of road is an estimated cost of the improvement of said section in the same form as section 1. The county clerk testified as follows:

"Q. Are there any estimates in your office relating to these permanent roads, was there ever one filed in your office excepting this which purports to be an estimate? A. No, sir; that is the only one."

An assistant of the consulting engineer, a Mr. Hunter, testified that he had copied this exhibit from one in the office of the consulting engineer in Kansas City, but was not positive when he did this. That he thought it was some time about the time the contracts

were entered into. He delivered the same to Mr. Hart, one of the county commissioners.

The county engineer testified that he made no estimate for paving. The estimate that he made was for dirt roads, and when asked the question: "You mean by grading the dirt roads, to be used as dirt roads?" answered, "Yes." He was then asked the question: "Was there any one in your office that made such an estimate?" and he answered, "No." With the records in this condition, we know of no testimony offered by Mr. Hart to contradict the positive testimony of the county clerk, none by the consulting engineer that he had ever prepared an estimate. This is the only evidence as we recall, except the evidence of Mr. Hunter, which is in substance as quoted above, and our attention is not directed to any other evidence. The records of the county commissioners on the date of December 17, 1917, contains the following statement:

"Be it Resolved, That the estimate of costs for the construction of permanent state roads of Okmulgee county, as provided for in bond issue heretofore carried and heretofore presented and filed, be and the same are hereby approved."

Counsel for defendants in error in their brief say:

"Under the provisions of section 7605 of the Revised Statutes of 1910, we take it that there is nothing that requires the disclosure of the matters contained in the preliminary estimate, and if it is filed and the contract price is within the provisions of the estimate, then the time of filing of the details of the same would be merely directory and not mandatory, and would not constitute a jurisdictional defect in the contract which was awarded within the provisions of the estimate."

But if we examine the sections of the statute we find they contain the following excerpts:

Section 7605, Rev. Laws 1910, in relation to the estimate is as follows:

"Said engineer shall file with the county clerk in a formal report preliminary estimates of the cost of the improvement of said highway with the notes of the surveys thereof within ten days from the time of his appointment for such work where the surveys and estimates cover not more than eighteen miles of highway and within a proportionate time for greater mileage * * *."

Section 7607 provides as follows:

"* * * and, shall order the engineer to prepare plats, surveys, plans, specifications, and all necessary data with itemized estimate of constructing the roadway to be built or improved, the original of which shall be filed with the county clerk."

Section 7610 provides as follows:

"Within five days from the filing of the surveys, plans, specifications and estimates, the county clerk shall advertise for bids for the building or improving of the highway in accordance therewith * * *."

These sections of the statutes in plain terms provide that an itemized estimate of the cost of the constructing of the improvement should be prepared, and the original should be filed with the county clerk five days before the advertisement for the improvement. The record clearly discloses that this was not done. This case then is within the rule announced by this court in the case of City of Muskogee v. Nicholson, 69 Oklahoma, 171 Pac. 1102, where the court said:

"The failure to have made by the city engineer and submitted to the council or commissioners of a city an estimate of the cost of a street improvement, as required under the provisions of section 602, Rev. Laws 1910, renders a contract for such street improvement, entered into in the absence of such preliminary estimate of cost, void, and the assessments against the abutting property to pay the cost of improvements so contracted for are likewise void."

But as counsel suggests that this might only be an irregularity, admitting for the sake of argument that Exhibit 4 was filed on the day the bids were received, still the same is not in conformity with section 7607, which requires that the estimate shall be itemized.

The plans and specifications make provision for paving with five different classes of pavement. These are designated:

No. 2. Bituminous macadam pavement.

No. 3. Asphaltic concrete pavement No. 1 (bitulithic).

No. 4. Asphaltic concrete pavement No. 2.

No. 5. Concrete pavement.

No. 6. Brick pavement.

This purported estimate places an estimate only on macadam pavement and permanent type, and does not attempt to itemize the cost of the different items that are included in each class of pavement or necessary for grading.

The engineer prepared a form for the different bidders to use in bidding upon this improvement. For grading the roads the form specifies the proposed "approximate quantities" as they are designated, that go to make up the necessary work to be done and material to be furnished to grade said roads. And as to the grading of each section, he divided the "approximate quantities" into fourteen different divisions, or items. Some of the items and the amount of the same are designated in road section 1. as follows:

1. Excavation—Solid rock cu. yards. 700.
2. Excavation—Intermediate cu. yds. 6400.
3. Excavation—Common cu. yds. 19,000.
8. Culvert—Pipe 24-30 in dia. lin. ft. 95.

There are 14 of these different items in each road section. The notice for bids provides that bidders on this work might bid on each item separately, or might bid upon the total of the work. The bids for grading submitted were bids upon each item separately, which was so much per yard or foot or whatever the same might be. The notice also provided that the county might award the contracts for any one item to one person, and one item to another, or might embrace them all in one contract to one person. The form contained 34 separate items. Items 15 to 34 as appears in the form refer to the pavement. Some of them are as follows:

15. Total pavement, sq. yds. 78,800.

16. Lower course paving base stone macadam pavement base cu. yds. 17,500.

19. Larger sized broken stone macadam pavement surface cu. yds. 6500.

26. Broken stone for brick pavement cu. yds. 11,200.

31. Cement for brick pavement bbls. 11,800.

32. Cement for concrete pavement bbls, 25,000.

33. Paving brick M. 2840.

Some of the bids in regard to the paving were submitted for different classes of paving at so much per yard. Others bid on certain items as specified in the form designated as approximate quantities at so much a yard or foot or however designated. This form discloses that the material to make up the different classes of pavement are all very different. Still the engineer gave to the county commissioners no estimate of the cost of any of the items that go to make up the different kinds of pavement, but only submitted a gross estimate, and designated the same as the cost of permanent type. As to whether that includes all type of pavement we do not know. This estimate does not meet the requirements of the statute. The force and effect of this objection to the estimate is not briefed by either side, and we know of no case where our court has passed upon this question, but the general rule is: If the statute requires a detailed or itemized estimate of the cost, an estimate of the gross cost is not sufficient. This rule is announced in 28 Cyc. 987. And the case of Henig v. Gilmore (Kan.) 6 Pac. 304, holding to the same effect. The case of Olen v. City of Topeka, 42 Kan. 709, 21 Pac. 219, holds that where the statute requires a detailed estimate, the statute is complied with if the estimate states the surface to be

paved, the kind of pavement, cost per yard, the aggregate cost, the number of lineal feet of curbing, its character and cost per foot and the aggregate cost. This estimate does not come within this provision of the statute. We then have an estimate not filed or itemized as required by statute; but even conceding for the sake of argument that defendants in error's contention is true, that these would only be irregularities, and if the contracts come within the provisions of the estimate, they should not be enjoined nor declared null and void.

This invites the court's attention to the question that the court requested both sides to brief in this case, to wit:

"Do the contracts come within the estimate, or are they in excess of the estimate?"

Counsel for defendants in error raise the question that the contracts were never attacked for this reason, and that this question was not raised in the court below, and therefore cannot be made an issue in this court. That is true, but counsel's position appears to be in his brief, "conceding that the estimate was not prepared or filed as provided by law, then the contracts should not be enjoined if they come within the provisions of the estimate." This is the identical question the court asked for additional authorities upon. Counsel certainly could not now complain, after taking the position he has in his supplemental brief that the contracts should not be enjoined if they come within the estimate, and now suggest to the court that the court should not look to the estimate to determine this question. Even conceding that this purported estimate would be sufficient to give the county commissioners jurisdiction to enter into said contracts, we are then confronted with the argument that the contracts entered into exceed the estimate as shown by this exhibit. It is true this question was not presented to the court below, nor made an issue in the case below, nor briefed in this court, until the attention of both sides was called to the same by this court. The evidence does not disclose when the plaintiffs in error were advised there was such an estimate as the purported estimate in existence. It would not do to say that the engineer or county commissioner would be permitted to carry an estimate around in their pockets, and when their proceedings are attacked for the reason that no estimate was prepared and filed as required by law, and at the trial such an estimate appears, and if it appears the contracts are in excess of the estimate, raise the plea that said question was not pleaded or relied upon in the lower court for reversal. True, the trial court did not pass upon this question,

but if the consulting engineer had performed the duties imposed upon him by the statute, that is, prepared an itemized estimate of cost, filed it with the county clerk, and if the contracts were in excess of the estimate, this no doubt would have been made an issue, and the trial court would no doubt have passed upon this question.

From an examination of the exhibit the estimate designates certain pavement as permanent type as the most expensive pavement, and conceding that the contract covers that type of pavement, it will then be necessary to look to the estimate and see what the cost of improving road section 1 was estimated at. The estimate for cost of grading is $20,-205. Cost of "permanent type" is $169,420. The number of yards to be paved on road section 1, as disclosed by the form upon which all bids were submitted, is stated to be 78,800 square yards. If we divide the number of square yards into the estimate, we will find that the cost of paving was estimated at $2.15 per square yard. It is not only true of section 1, but is equally true of each section of the road. The bid of the Western Paving Company was $2.28 per square yard. The total amount of this bid on road section 1, as tabulated by the engineer, and introduced in evidence as Exhibit 7, is $179,664, or an excess of a little over $10,000 upon this section of the road for the paving alone.

On the ten sections of the road the contract price of the Western Paving Company exceeds the estimate cost as made by the consulting engineer between $80,000 and $90,000. This is taken from the estimate filed as Exhibit 4, and the tabulations made by the engineer, appearing in Exhibit 7.

If we take the combined cost of road section 1, we have cost of grading, $20,295; cost of paving, $169,420; or a total estimated cost of $189,625. The contracts entered into as tabulated by the engineer and by the Harrison Construction Company upon this section of the road are as follows: Grading contracts, $17,362; paving contract, $179,664; total contract cost, $179,026, or an excess of $7,401 upon this particular section of the road. This same ratio pertains to each of the other nine sections. The cost as entered into by the contracts exceeds the estimated cost on the ten sections of the road over $60,000.

Counsel for defendants in error suggest that the only testimony introduced in the case was that of the assistant engineer, Hunter, and appears to be testimony elicited by the defendants in error, and he was asked the following question:

"Q. Did you make a comparison of the bids with the estimates filed by the consulting en-

gineer to ascertain whether or not all the bids of the contractors are within the estimate of the engineer? A. Yes. Q. Are they? A. Yes, they are. Q. In each instance? A. Of the successful bidder or all bidders? Q. The successful bidders. A. The successful bidders. Q. In other words, the contracts are all within the estimate? A. Yes, sir. Q. Both Harrison, Romans and Western Paving Company? A. Yes, sir."

But this is not the only testimony. This is the only testimony of a witness upon this point. And while counsel suggests that if the matter had been gone into, it would have been a very easy matter to have explained the comparison of cost with the estimate, it does not seem to us that it is very difficult to explain nor should it take a civil engineer to tell whether the contract price is within the estimate. It does not require expert evidence to ascertain in a case where it is estimated there will be 78,800 square yards to pave, and the cost of paving such area is estimated at $169,420, that the cost per yard will be $2.15. The bid on the paving as approved in the contract let is for $2.28 per square yard and the engineer tabulates the amount to be $179,664. We do not think that it is necessary or would be necessary to call an engineer to state whether $2.28 per square yard was more than $2.15 or whether $179,664 is more than $169,420.

Counsel for defendants in error have suggested in their brief that it is customary for the estimate not to be filed, so the bidder will not know what the estimate is; but we think that such an argument should have no application to an engineer who fulfills his duty to the county that pays him for doing his work. If he complies with the law, the county commissioners and general public will know what the costs of the improvement are supposed to be, and in what way and manner the engineer figured the cost of the improvement. If he files only a slip of paper, as in the case at bar, the county commissioners will receive no benefit from it, nor will the general public. They will have no idea of how he estimated the cost. If an engineer will simply do his duty, make his itemized estimate of the cost, and not guess at it, the public will be protected and so will the bidders. This was the intent of the Legislature. Of course, if the engineer has just guessed at the cost of the improvement or files an excessive estimate, or fails to ascertain what it will cost to lay the foundation of paving, what it will cost for the surface, or what it will cost to grade the road, the argument might be plausible. He is employed for the reason he is supposed to be able to ascertain quite accurately the material necessary to be used, the yards to be excavated, the number of yards constitut-

ing the paving, and the cost of each item. If he fails to give this information to the county, he is then receiving money for work which he has failed to do, and gives the county nothing in return for his money received. The county commissioners could easily guess at the cost of the improvement. His estimate should be more than a guess; it should be sufficiently accurate that if contracts are entered into, within his estimate, they will not be excessive.

Neither will the argument that you cannot tell whether the contract price exceeds the estimate until the work is completed for the reason this work is done on the yardage basis be of any avail. It is true, it is done upon the yardage basis, and to say you could not tell whether the contract is going to be within the estimate until the work is completed would be to say that the Legislature, not only of Oklahoma, but of nearly every state in the Union that has passed such statutes wherein they provide the estimate shall not exceed the estimate, has only been passing useless legislation. With this we cannot agree. It is easy to tell that $2.28 per square yard is more than $2.15, and if you reduce the number of yards to be completed, the estimate would be reduced in the same proportion.

Counsel further suggests that you cannot tell whether the contracts exceed the estimate, as the estimated cost of the engineer was $1,400,000, but with this we cannot agree, as the estimated cost of the engineer upon this 118 miles of road amounts to approximately $3,000,000. The contracts entered into by the county commissioners call for the expending of approximately $1,700,000 with only $800,000 to pay for the same. Instead of this being an argument in favor of the defendants in error, it seems to us, it would be an argument against the defendants in error, for the reason they are contracting to expend money which they do not have. This would tend to support the contention of the plaintiffs in error that the county commissioners have entered into this contract without any knowledge upon their part as to how much road can be paved, how much will be paved, and how wide the road shall be, how much shall have an eight-inch base, and how much shall have a five-inch base, and instead of being an argument in support of defendants in error's contention, we think it would only be an argument in support of plaintiffs in error's contention that the commissioners have entered into said contract without any knowledge upon their part as to how much money is to be expended, or how much they can expend.

The Harrison Construction Company in one

of its supplemental briefs suggests that their contracts for each section of road are all within the estimates for the grading of each section. This is true, but they submit no authorities, nor do they attempt to construe the statute, as to whether it means the combined contracts for the grading and paving of each section should determine whether the contracts are in excess of the estimate, or whether, if one bid is within the estimate of a particular item, such bid could be accepted and a contract entered into for the same, and the same would be legal. The statute provides that no "contracts," using the plural, shall be entered into at a price exceeding the estimate. This section of the statute, when construed with the section of the statute that provides for the estimate to be itemized, must be construed to mean the combined contracts of the improvement, for each section of the road, should not exceed the gross estimate of the cost for improving such section. The record plainly discloses, notwithstanding the testimony of the assistant engineer, that the contracts entered into are in excess of the estimate as to each ten sections of the road. The contracts entered into on the ten sections of road, when construed together, are in direct violation of section 6, chapter 28, Session Laws of 1916. This court has held in the case of Morrow v. Barber Asphalt Paving Co., 27 Okla. 247, 111 Pac. 198, and in Bowles v. Neely, 28 Okla. 556, 115 Pac. 344, that a contract for public improvements entered into by a municipality in excess of the estimated cost submitted with the plans and specifications is void.

As to the sections of the roads where no contracts were entered into for paving, a somewhat different situation might prevail. Neither side has raised or presented this question, but it was testified to without contradiction that the county commissioners could not pave to exceed 50 or 60 miles of road, being that portion of the road covered by the contracts, and no doubt would be unable to pave all of that. The bonds were voted solely for the purpose of building permanent roads and could not be used simply for grading the roads, when it is admitted the funds available are insufficient to pave the same after the grading has been done.

Section 6 of chapter 30, Session Laws of 1916, defines permanent roads as follows:

"Permanent roads are defined to mean roads surfaced with crushed rock, gravel, macadam, brick, concrete, asphalt-macadam, or any other hard surfacing material."

The bonds were issued for the purpose of constructing permanent roads and the commissioners could not enter into a contract to use this money for any other purpose. This court in the case of Town of Afton v. Gill, 57 Okla. 36, 156 Pac. 658, said:

"Where it is shown that funds derived from the sale of bonds about to be issued will be devoted to unlawful purposes, and where it is further shown that said funds may not properly be applied to the purposes for which they were voted, the issuance of the bonds will be enjoined."

We are now confronted with the following objections:

First: That there is no evidence to show that any estimate was ever approved by the consulting engineer.

Second: That none has ever been filed with the county clerk, although there may be some evidence that on the date bids were received, one had been delivered to the county clerk.

Third: That it was not filed as required by the statute.

Fourth: That the purported estimate is not itemized as required by the statute.

Fifth: If the purported estimate is sufficient to comply with the law as being an estimate and the filing and approving of the same would only be an irregularity, then the contracts for the improvement exceed the estimate of the cost for said improvement.

The record contains some 2,500 pages and charges numerous irregularities and fraud, practically all of which pertains to the contract of the Western Paving Company. The principal ones are:

First: That there were material changes in the plans and specifications upon which the bids were invited, they being thereafter changed by the board of county commissioners or consulting engineer, and after the bonds were received. The changes are alleged to have been:

First: A change of base of road from eight inches to five inches.

Second: A concession of freight rates made on account of war conditions.

Third: Change in the manner of payment upon the work done.

Fourth: A change from hand crushed to machine crushed stone.

Fifth: There was also a change in that the duties of the board of county commissioners had been delegated to the consulting engineer, which was contrary to law.

Sixth: That the plans and specifications were so drawn as to prevent open, free and competitive bidding for the work.

Seventh: That the commissioners adopted

a patented pavement and that no statement was filed by the holder of the patent, as required by the former decisions of this court, with the county commissioners.

Eighth: That the kind and character of pavement adopted was of no value.

As to these questions, under the view taken by the court it will be unnecessary to pass upon the same, as the conclusion already reached requires a reversal of the case. It would be sufficient to say that if the questions were not jurisdictional, the questions would all present irregularities. These irregularities have all been pointed out to the county commissioners and we cannot presume that in their further proceedings the irregularities will again occur. There should be no necessity for them again occurring. If the consulting engineer will be as careful in the protection of the county's interest as he has been to see that the plans and specifications were so adroitly drawn that they included all the necessary requirements to come within the patented pavement controlled by Warren Brothers, there should be no future difficulty in this case.

It appears from the evidence that the Harrison Construction Company and Romans have performed some labor and done some work under their contracts. This court will not say as to whether by proper procedure the board of county commissioners might not enter into a contract or contracts for the paving of certain sections of the road partially graded, where such paving contracts combined with the contracts of Harrison Construction Company and Romans would not exceed the estimate. As to whether this could be done, that would raise numerous legal questions, none of which are briefed by either side, and the court does not feel it should assume the responsibility of deciding them under those conditions. It is sufficient to say that the law framed by the Legislature for building roads, wherein it is stated that "no contracts should be entered into that exceed the estimate," must be interpreted to mean each section of the road upon which an estimate is filed, and anticipates that the county will enter into contracts for the completion of each section, and while contracts may be let to different parties for the different portions of the work, the total contracts of each section must be for the completion of one section, and within the estimate.

Under the state of facts as they now exist, the fulfillment and the enforcement of the contracts, when taken as a whole, will be enjoined.

For the reasons stated the judgment of the district court will be reversed and remanded with directions to declare the contract of the Western Paving Company null and void, and to enter a permanent judgment against the enforcement thereof, and that an injunction be issued against the enforcement and fulfillment of the contracts of Harrison Construction Company and S. P. Romans in the form they now are.

OWEN, C. J., and RAINEY, PITCHFORD, and JOHNSON, JJ., concur.