494 P.2d 26

Governor Jack A. WILLIAMS, Commander-in-Chief, National Guard of Arizona, Petitioner,

v.

The SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF PIMA; SUNNYSIDE SCHOOL DISTRICT NO. 12, real party in interest, Respondents.

No. 10684–PR.

Supreme Court of Arizona, In Banc.

Feb. 17, 1972.

Rehearing Denied March 14, 1972.

Gary K. Nelson, Atty. Gen., Phoenix by John S. O'Dowd, Asst. Atty. Gen., and David I. Kali, Associate Counsel, Tucson, for petitioner.

Rose Silver, Pima County Atty. by Lawrence Ollason, Sp. Deputy County Atty., Tucson, for respondents.

CAMERON, Vice Chief Justice.

We granted a petition to review a decision and opinion of the Court of Appeals which ordered the trial court to grant summary judgment to the defendant, Governor Jack A. Williams, Commander-in-Chief of the Air National Guard of Arizona, hereinafter also referred to as the "Guard." The trial court had refused the Guard's motion to dismiss the complaint of the Sunnyside School District No. 12 in which the school has asked that the Guard be permanently enjoined from using, except in an emergency, the airspace immediately above or in proximity to the school. See Williams v. Superior Court, 15 Ariz.App. 480, 489 P.2d 854 (1971).

We are called upon to determine:

1. Does the Federal Aviation Act of 1958 preempt the state courts of jurisdiction to grant equitable relief to a school seeking to prevent flights by the Air National Guard over the school when the flights are controlled by employees of the Federal Aviation Administration?

2. If the court has jurisdiction, may it grant injunctive relief to prevent a public official (the Governor as Commander-in-Chief of the National Guard of Arizona) from exercising the duties of his office?

3. Was the Superior Court without jurisdiction because the National Guard is an instrumentality of the United States?

The relevant facts are that all flights at Tucson International Airport are controlled by employees of the Federal Aviation Administration, housed in a tower at the airport. Mr. Carl Swanson, chief traffic air controller for the Federal Aviation Administration, testified that he and his assistants allocate flights (using wind, safety, airport traffic, and neighborhood noise abatement as guides) for all civil and military aircraft, including the Air National Guard, one of the airport's tenants.

The Arizona Air National Guard conducts a training school at the airport, the purpose of which is to teach pilots of Arizona and other states to fly certain types of jet aircraft. The training school has greatly increased the number of flights landing and taking off from the airport. The reason for the size of the flight program, which is authorized by the Secretary of the Air Force, is the weather in Tucson, which, Mr. Swanson testified, is among the best in the world for this purpose. Normally the Guard flies its aircraft only on weekends. However, when the training school is being held, flights occur during the week and during school hours.

The school is less than a mile northwest of at least one of the runways generally used by the Guard. Testimony was to the effect that at times the planes made a great deal of noise, enough to disturb the children at the school. Some testimony was also received to the effect that the flights in the Guard training program conceivably constituted a greater safety hazard to the school than other flights. There were no allegations, and indeed it was explicitly denied in an affidavit by an employee of the defendant, that any federal rule or regulation was broken.

The history of the litigation is as follows. On 30 March 1971, Sunnyside School District No. 12 filed a complaint against Governor Jack A. Williams, Commander-in-Chief of the National Guard of Arizona, seeking injunctive relief concerning the jet aircraft flights in the vicinity of the school. Plaintiff asked "that defendant be permanently enjoined from permitting the National Guard from taking off or landing within the airspace immediately above or in close proximity to the plaintiff's school buildings with the exception of an emergency situation * * *."

On 25 May 1971, the Guard filed a motion to dismiss the complaint, contending that the court was without jurisdiction to grant the relief sought. The court denied the motion to dismiss on 22 June 1971, and the Guard brought a special action in the Court of Appeals, Division Two. The Court of Appeals treated the motion to dismiss as a motion for summary judgment and ordered the trial court to grant the motion, on the grounds that the federal government had preempted the field of allocating and controlling the use of airspace. In a companion case not before the court at this time, the school seeks relief in inverse eminent domain against the Tucson Airport Authority. See Sunnyside School District No. 12 v. Tucson Airport Authority, Cause No. 123288 (filed 3 December 1970).

## PREEMPTION

A New Jersey judge, dealing with an airport-noise case somewhat analogous to ours, traced the history of federal regulation of the airspace and found a pattern of disallowing the preemption argument when the local attempts at regulation did not interfere at all with principal areas of federal concern, such as safety. Judge Joseph Stamler, while acknowledging that the federal government is supreme in the field of air traffic regulation for safety purposes, stated:

"The controls and remedies provided by the various federal aviation enactments nowhere state that they are sovereign and exclusive. * * * In United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), a chicken farmer alleged that he had been bothered repeatedly by aircraft from a nearby military base. The noise and vibration of overflying aircraft essentially destroyed the residential value of his land and its value as a commercial chicken farm. The court, recognizing an 'exclusive national sovereignty' and the right of freedom in air transit, nevertheless held that the owner of land might recover for a taking by governmental use of air space resulting in destruction in whole or in part of the usefulness of the property itself.

*    *    *    *    *    *

"* * * With safety to the aircraft, passengers and the land-bound public below as a prime goal, this court agrees that a court's conventional experience and decision-making power cannot and must not supplant the exercise of administrative discretion of the expert agency created by Congress. Where there is a clash between state and federal authority in this regard, the supremacy of the federal is recognized. Where there is no conflict, and certainly where there is state action consistent with the avowed second purpose of F.A.A., suppression of noise, a state court may act." Township of Hanover v. Town of Morristown, 108 N.J. Super. 461, 261 A.2d 692, 700 (1969).

The Supreme Court of California has also considered the subjects of airplane noise abatement and preemption in a detailed manner. The California court, although upholding a denial of an injunction on the facts of the case, stated:

"The * * * protection of health and welfare are matters primarily of state law, and only a strong federal interest, as determined by Congress, will necessitate infringement upon state-created rights in these areas. Only a compelling federal interest, e. g., where the state-created liability would clearly frustrate federal purposes, justifies our implying an intent on the part of Congress to nullify common-law rights normally in the state-law sphere. In People v. Western Air Lines, Inc., 42 Cal.2d 621, 645, 268 P.2d 723, 737, we said, 'Any doubts on the subject should be resolved in favor of state power * * *'." Loma Portal Civic Club v. American Airlines, Inc., 61 Cal.2d 582, 39 Cal.Rptr. 708, 714, 394 P. 2d 548, 554 (1964).

In a case concerning the analogous field of navigable waterways, the United States Supreme Court upheld the application of a

municipal smoke control ordinance to a vessel that was operating in interstate commerce and was powered by federally licensed boilers. The court explained its decision in the following terms:

"As is apparent on the face of the legislation, however, the purpose of the federal inspection statutes is to insure the seagoing safety of vessels subject to inspection. Thus 46 U.S.C. § 392(c) makes clear that inspection of boilers and related equipment is for the purpose of seeing to it that the equipment 'may be safely employed in the service proposed.' The safety of passengers, 46 U.S.C. § 391(a), and of the crew, 46 U.S.C. § 391(b), is the criterion. The thrust of the federal inspection laws is clearly limited to affording protection from the perils of maritime navigation. (citations omitted)

"By contrast, the sole aim of the Detroit ordinance is the elimination of air pollution to protect the health and enhance the cleanliness of the local community. * * *

* * * * * *

"We conclude that there is no overlap between the scope of the federal ship inspection laws and that of the municipal ordinance here involved. For this reason we cannot find that the federal inspection legislation has pre-empted local action. To hold otherwise would be to ignore the teaching of this Court's decisions which enjoin seeking out conflicts between state and federal regulations where none clearly exists. Savage v. Jones, 225 U.S. 501, 32 S.Ct. 715, 56 L. Ed. 1182; H. P. Welch Co. v. New Hampshire, 306 U.S. 79, 59 S.Ct. 438, 83 L.Ed. 500; Maurer v. Hamilton, 309 U.S. 598, 60 S.Ct. 726, 84 L.Ed. 969, 135 A.L.R. 1347." Huron Portland Cement Co. v. Detroit, 362 U.S. 440, 445-446, 80 S.Ct. 813, 817-818, 4 L.Ed.2d 852, 857-858 (1960).

Counsel has cited cases to the contrary: City of Newark, New Jersey v. Eastern Airlines, 159 F.Supp. 750 (D.N.J.1958); American Airlines, Inc. v. Town of Hempstead, 272 F.Supp. 226 (E.D.N.Y.1967), aff'd 398 F.2d 369 (2nd Cir. 1968), cert. den., 393 U.S. 1017, 89 S.Ct. 620, 21 L.Ed. 2d 561 (1969); and Allegheny Airlines v. Village of Cedarhurst, 132 F.Supp. 871 (E.D.N.Y.1955), aff'd 238 F.2d 812 (2nd Cir. 1956). However, these decisions, though discussing preemption, dealt with infringements on the areas in which the F.A.A. is expert: safety, flight patterns, altitudes, etc. The scheduling of certain flights so as not to coincide with the times of maximum school usage was not before the courts in these cases.

■ In the instant case, there can be no presumption that the trial court, if allowed to hear the matter, will wade into impermissible waters. The chance that some possible remedies would infringe upon the federal preeminence in an area is not a valid basis upon which to deny a state court the power to hear a case on its merits and reach a constitutionally sound result. The decision of the Court of Appeals seems counter to the teaching of Huron, supra, that courts should not seek out "conflicts between state and federal regulation where none clearly exists."

■ We fully recognize federal preeminence in the area of interstate commerce and further recognize that the allocation and regulation of airspace is one of the prime areas of federal control. But we do not think that the federal government has indicated that its control over the airspace is so complete that there can be no local attempts at noise regulation which are not in conflict with the areas of basic federal concern—safety, altitudes, etc.—and are actually consistent with an important federal objective: minimization of noise from airplane operations. Whether we consider this a motion to dismiss or a motion for summary judgment (Rules 12(b) and 56(c), Rules of Civil Procedure, 16 A.R.S.), we cannot say that the Guard was entitled to "judgment as a matter of law."

## DOES § 12–1802 A.R.S. PREVENT AN INJUNCTION?

§ 12–1802 A.R.S. reads in pertinent part:

"§ 12–1802. Prohibition upon granting injunctions for certain purposes

"An injunction shall not be granted:

\*　\*　\*　\*　\*　\*

"4. To prevent enforcement of a public statute by officers of the law for the public benefit.

\*　\*　\*　\*　\*　\*

"6. To prevent the exercise of a public or private office in a lawful manner by the person in possession."

■ Whether an injunction may be issued in an individual case is not a question that can be answered without a thorough study of the facts of the case. Normally, whether the acts of officers are exercised in a lawful manner and within their power under the statute is itself a fact question. This court has discussed this necessity as follows:

"\* \* \* Notwithstanding the statute, we believe it to be the law that if public officers exceed their authority and resulting injury cannot be adequately provided by proceedings at law, equity will enjoin the commission of such illegal act. City and County of Denver v. Pitcher, 54 Colo. 203, 129 P. 1015.

"While it is true that courts will not interfere by injunction where officers are acting in the execution of a public statute, they may be enjoined from acts which are beyond their power. Fritchman v. Athey, 36 Idaho 560, 211 P. 1080; Town of Afton v. Gill, 57 Okl. 36, 156 P. 658." Crane Co. v. Arizona State Tax Commission, 63 Ariz. 426, 445, 163 P.2d 656, 664, 163 A.L.R. 261 (1945). See also Hislop v. Rodgers, 54 Ariz. 101, 92 P.2d 527 (1939); Board of Regents of Universities and State Colleges v. City of Tempe, 88 Ariz. 299, 356 P.2d 399 (1960); McClusky v. Sparks, 80 Ariz. 15, 291 P.2d 791 (1955).

■ We hold that a determination on this issue can only be made after a trial.

Thus, we do not now hold that the Guard can be enjoined. We only hold that the plaintiff school should be allowed to attempt to prove that the Guard has acted outside its authority and is therefore subject to the injunctive power of the state courts.

## WAS THE SUPERIOR COURT WITHOUT JURISDICTION BECAUSE THE NATIONAL GUARD IS AN INSTRUMENTALITY OF THE UNITED STATES?

The last arguable point of the defendant Guard is that the Superior Court was without jurisdiction because the Guard is an instrumentality of the United States. While this contention, if factually true, raises grave constitutional problems, it is not, in our opinion, factually true. We think the Guard, except in wartime, is more correctly labeled an instrumentality of the State government than the federal government.

The Arizona Constitution, A.R.S., seems dispositive of this issue. Article 16, § 2 states:

"The organized militia shall be designated the 'National Guard of Arizona,' and shall consist of such organized military bodies that now exist under the laws of the Territory of Arizona or as may hereafter be authorized by law."

And Article 5, § 3 reads:

"The Governor shall be commander-in-chief of the military forces of the State, except when such forces shall be called into the service of the United States."

■ Thus, by the Arizona Constitution, the National Guard, except when actually activated for service by the President, is a State organization. Its members are paid by the State and under the command of the Governor. The National Guard has not been activated and is not now under federal control.

We agree with the United States Court of Appeals for the Fifth Circuit:

'The only question presented by this appeal is whether a member of the Na-

tional Guard of a State, who is not a caretaker, and who has not been called to active service of the United States is an 'employee of the Government' within the meaning of the Federal Tort Claims Act. This Court is firmly committed to answer that question in the negative. The Tenth Circuit is in accord. * * * Additionally, all located decisions on the state and federal-militia relationship hold that National Guardsmen of the several states are employees of the state except when in the actual service of the United States." Storer Broadcasting Company v. United States, 251 F.2d 268–269 (5th Cir. 1958). See also State of Maryland for Use of Levin v. United States, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965).

Decision and opinion of the Court of Appeals in 15 Ariz.App. 480, 489 P.2d 854 (1971) is vacated.

HAYS, C. J., and LOCKWOOD, J., concur.

STRUCKMEYER, Justice (specially concurring).

I am in complete agreement with the disposition of this case by the majority of the Court. However, it is my opinion that it can and should be decided without determining the question of preeminence.

This is basically a simple action. The plaintiff, School District No. 12, filed a complaint alleging that the Air National Guard of Arizona flies jet airplanes in great numbers within the airspace of or in close proximity to the School District's buildings, causing "deafening, disturbing, frightening noises and vibrations," interrupting the teaching processes of the School District, and causing great fear, nervousness and apprehension for the personal safety of the personnel and students of the School District. It is important to recognize that the School District does not seek to control the pattern of the flights of the Air National Guard except indirectly by restricting the use of National Guard planes for training flights during school hours. No relief is sought against the dispatching of planes by the Federal Aviation Administration in the manner of their departure, or landing, or their pattern of flying at or near the airport. Petitioners do not assert that the Air National Guard is engaged in interstate flights and do not invoke the interstate commerce clause of the United States Constitution. The issue is whether the Air National Guard may be prohibited from flying during hours which will disturb the peaceful occupation and use of the District's school.

I am of the opinion that it is simply no defense for a state agency to say that someone else directed it to commit unlawful acts. The Air National Guard is committing the acts complained of and it matters not at whose direction. The complaint and evidence introduced at the hearing on the preliminary injunction strongly suggests that the flights of the Air National Guard are unlawful as a public nuisance:

"Anything which is * * * an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property * * * by a considerable number of persons * * * is a public nuisance." A.R.S. § 13–601.

Public nuisances, by A.R.S. § 13–602, subsec. A, are punishable as a misdemeanor.

Fixel, in his Law on Aviation, 4th ed., § 113, p. 94, states:

"Low altitudes must necessarily be flown until an airplane is underway or lands, and such flights at low altitudes when resulting in interference with the then existing use to which the land is put, is outside the definition of a lawful flight, * * *."

The Restatement of the Law of Torts 2nd, Volume 1, § 159(2), provides:

"Flight by aircraft in the air space above the land of another is a trespass if, but only if

(a) it enters into the immediate reaches of the air space next to the land, and

(b) it interferes substantially with the other's use and enjoyment of his land."

The Supreme Court of the United States, in U. S. v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, said that if a landowner is to have full enjoyment of his land, he must have "exclusive control of the immediate reaches of the enveloping atmosphere." Comment (*l*) to § 159 of the Restatement states:

> " 'Immediate reaches' of the land has not been defined as yet, except to mean that 'the aircraft flights were at such altitudes as to interfere substantially with the landowner's possession and use of the airspace above the surface.' * * * "

As pointed out in the principal opinion, the National Guard is the state militia, the military force of the state, Article V, § 3, and Article XVI, § 2, of the Arizona Constitution. By A.R.S. § 12–1802 [6], an injunction shall not be granted "[t]o prevent the exercise of a public * * * office in a lawful manner * * *." Obviously, an injunction will lie against the exercise of a public office in an unlawful manner. As said in Crittenden v. Superior Court, 61 Cal.2d 565, 39 Cal.Rptr. 380, 383, 393 P.2d 692, 695 (1964):

> "The illegal activity of the state can no more find a haven in 'public' benefit than can that of a private person; its interest in engaging in illegal activities deserves no greater protection than like conduct of private persons."

*And see* Wales v. Tax Commission, 100 Ariz. 181, 412 P.2d 472 (1966).

The Air National Guard is in control of the planes which have created the alleged nuisance. If it is compelled to fly at certain times or in particular patterns for safety or for any reason—here because the federal government controls the airspace through the Federal Aviation Administration—nevertheless, the Superior Court does not lose jurisdiction to enjoin the flights where unlawful as trespasses or as a public nuisance. The reason an unlawful act is committed is not a defense to the charge of unlawfulness.

The issue which should control the disposition of this case was raised by the School District in its response to the petition for a writ of prohibition in the Court of Appeals. Preeminence of the federal government is purely and simply a fictitious issue, a straw man, so to speak, raised by petitioner, the Air National Guard.

For the foregoing reason, I would vacate the decision of the Court of Appeals.

HOLOHAN, Justice (dissenting):

I dissent from the position taken by the majority and I would reverse the decision of the trial court and direct that judgment be entered in favor of Petitioners dismissing the action filed by the Respondent.

The opinion of the Court of Appeals in this cause, 489 P.2d 854, in my view ably states the correct principles of law governing this case. I fully agree with Judge Howard, the author of the opinion, when he states:

> "From the broad scope of federal statutes and regulations governing and controlling the use of airspace and air traffic, we conclude that Congress intended to centralize full and dominant control of the navigable airspace in the federal government so as to provide for its safe and most efficient use. Lockheed Air Terminal, Inc. v. City of Burbank, [318 F.Supp. 914] supra; American Airlines, Inc. v. Town of Hempstead, 398 F.2d 369 (2d Cir.1968), cert. denied 393 U.S. 1017, 89 S.Ct. 620, 21 L.Ed.2d 561 (1969).

> "The result of the relief asked for by the respondent in this action would, . . constitute a direct regulation of the flight of aircraft through navigable airspace.

> "This court has, of course, great concern for the welfare and safety of the children in this community. However, this concern does not permit us to wade in forbidden waters. Indeed, if the record did in fact disclose violations of the FAA regulations, the proper forum

would not be a court of this state but rather, the United States District Court."

In addition, the position that the action sought by Respondent constitutes an interference with interstate commerce is illustrated by the holding in one of the cases relied upon by the majority, Loma Portal Civic Club v. American Airlines, Inc., 61 Cal.2d 582, 39 Cal.Rptr. 708, 394 P.2d 548 (1964). In the cited case the California Supreme Court affirmed the refusal of the trial court to grant an injunction sought by owners of property near a public airport to enjoin certain flight operations because of noise, vibration and "apprehension to many people." That court held that a commercial airline operating in conformity with federal law shall be without interference by the injunctive process.

The California Supreme Court in the cited case pointed out that there is extensive federal enforcement procedures and punishment provided for violation of federal law, and that such proceedings may be initiated by complaint of any interested party; see generally 49 U.S.C. §§ 1429, 1471–1474, 1481–1489.

The remedy of the respondents is in a federal forum, and/or action for damages in inverse eminent domain against proper parties. It is to be noted that respondent filed such an action prior to the complaint in this cause.

Further, in my judgment, injunctive relief is not permitted in this cause because it would be in violation of the provision of A.R.S. § 12–1802, subsections 4 and 6. The interests involved in this action represent important considerations of public interest. This action has placed in conflict the elements of defense and education. It is not sufficient to state that the one must adjust its hours to fit the other. Are the courts to make this decision? In my judgment the above cited statute was enacted for the purpose of forbidding courts of this state from restraining legitimate public interests even though at times these protected and public interests may clash. The remedy in the courts is for the so-called injured party to seek recovery by way of damages. In this instance additional remedies are available in the federal forum both administratively and in the District Court.

The training exercises carried out by the National Guard are part of a legal and required duty imposed by the command structure of the National Guard and pursuant to the requirements of the Secretary of the Air Force. The record discloses, even as respondent below alleged, that pilots from other state guards are being trained at the Tucson facility. This type of training is pursuant to the authority granted the Secretary of the Air Force in 32 U.S.C. § 505. The training is being conducted by officers employed under 32 U.S.C. § 709. The training programs follow the policies and methods required and approved by the Secretary of the Air Force. The authority of the federal government to act in this field is pursuant to Article I, Section 8 of the Constitution:

"To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress;"

This is yet another reason why the state court has no jurisdiction to issue an injunction which in effect restrains the authorized, approved and prescribed program of the Secretary of the Air Force. No state court has authority to interfere with such a federal program.

Nor does calling the National Guard a state agency solve the problem. Both the constitution and the federal statutes provide that the activities of the Guard may be regulated by the federal government. It is clear from the record that the Secretary of the Air Force has acted and insofar as the activities in this case are concerned they are part of a federal activity by a state agency under the direction and re-

quirements prescribed by the Secretary of the Air Force.

The action of the Court today casts a cloud on an important program of training pilots of this state and other states. The Secretary of the Air Force is faced with the possibility of an endless variety of injunctive acts by local courts on the complaint of any citizen. Such possibilities are in violation of the federal constitution and certainly constitute a frustration of the national policy to train and prepare the men of the Air National Guard for national defense, and the decision today gives to the Superior Court the power to regulate the use of airspaces at least by military aircraft. This result is not only unconstitutional but most unsound.