[Civil No. 4692.   Filed November 9, 1945.]

[163 Pac. (2d) 656.]

CRANE CO., a Corporation, Appellant, v. ARIZONA STATE TAX COMMISSION, a Body Corporate and Politic, D. C. O'NEIL, THAD M. MOORE, and JOE HUNT, as Members of the Arizona State Tax Commission, Appellees.

Messrs. Snell, Strouss & Wilmer, for Appellant.

Mr. John L. Sullivan, Attorney General, Mr. Earl Anderson, Assistant Attorney General, for Appellees.

Messrs. Cunningham & Carson, Mr. Orme Lewis, *Amici Curiae.*

MORGAN, J.—Appellant-plaintiff brought this action to enjoin appellees-defendants from assessing or attempting to levy or assess a tax against it based upon gross sales by it of materials to contractors, or based upon gross sales or transactions by it in interstate commerce. The cause below was submitted to the court on an agreed statement of facts, the material portions of which we quote:

"The parties hereto further stipulate and agree that the defendants, during the months of July and August, 1943, made, or caused to be made, an audit or investigation of plaintiff's gross sales in its Phoenix and Tucson stores for the period of July 1, 1941, to June 30, 1943, both inclusive; that a copy of said audit was delivered to plaintiff by defendants or their agents; that said audit finds and sets forth additional sales tax in the aggregate amount of $41,240.84 due from plaintiff for the said period of July 1, 1941, to June 30, 1943, both inclusive, under the Excise Revenue Act of the State of Arizona, in excess of and in addition to the sales tax heretofore reported and paid by plaintiff for and covering said period in accordance with the provisions of said Excise Revenue Act.

"That said additional sales tax, in the amount of $36,270.03, is shown by said audit to be based upon and is based upon the gross sales by plaintiff during the aforesaid period to contractors of materials used by said contractors in the performance of contracts and going into and becoming a part of the projects constructed under said contracts. . . .

"That said additional tax in the amount of $4,970.81 is based upon sales by plaintiff during the aforesaid period, at its Phoenix and Tucson stores, of merchandise or materials manufactured and located outside the State of Arizona and delivered from the point without the State directly to the purchaser within the state and which could not be obtained within the State of Arizona."

It was also stipulated that on January 18, 1939, the State Tax Commission, by a motion approved and passed, instructed its sales tax department not to place

any tax on materials sold to contractors, except such materials as shovels, picks, tools, or other equipment used and consumed by contractors. This rule remained in force until repealed by a regulation of the commission adopted January 1, 1943. On July 31, 1939, the commission adopted a resolution exempting from the provisions of the privilege sales tax sales of material by residents of Arizona delivered from without the state directly to the buyer within the state or to the seller for immediate delivery to the buyer, on the ground that such sales should be considered as made in interstate commerce, upon condition, however, that records of such shipments were properly kept, and that the commodity sold could not be obtained within the state. This rule continued in effect until April 5, 1943. The plaintiff and other licensees were advised of these actions by the tax commission, and thereafter, while the motion and regulation remained in effect, no taxes were included in the sales price of such materials or collected from purchasers. The transactions are all closed and the plaintiff cannot pass on to the buyers or otherwise recoup for any taxes involved in this action which it may now be required to pay.

The trial court entered judgment enjoining defendants from levying any tax against plaintiff based upon the sales of materials to contractors on or after March 1, 1943. The injunction was dismissed as to sales occurring prior to March 1, 1943, and as to the sales of merchandise from without the state of Arizona. The parties made respective appeals from that portion of the judgment adverse to them.

The questions for determination are:

(1) Under the provisions of Section 73–1303(d), Arizona Code Annotated 1939, does a merchant have to pay a two per cent sales tax on merchandise sold to contractors who used the material purchased in construction for others?

(2) Are sales made by merchant within the state of Arizona of merchandise or materials manufactured and located without the state and delivered from without the state directly to purchasers within the state, and which could not be obtained within the state, subject to the tax?

(3) Are the defendants estopped to levy or assert a tax based upon sales made while the motion and regulation of the tax commission referred to, continued in effect?

(4) Do the courts have power to enjoin the assessment or the levy of a tax attempted to be imposed under the provisions of the Excise Revenue Act, Art. 13, chap. 73, Arizona Code Annotated 1939?

The solution of the first question depends entirely on whether a sale to a contractor, under the circumstances stipulated, constitutes a sale at retail or wholesale. If the former, the plaintiff in this case would be required to pay the two per cent tax in the amount as found by the commission (unless estoppel applies to prevent collection). If the latter, no tax could be legally assessed, levied or collected.

Section 73-1303(d), *supra,* imposes a tax equal to two per cent of the gross proceeds of sales or gross income from the business of every person engaging in "Selling any tangible personal property whatsoever at retail, except bonds and stock." Section 73-1302, Arizona Code Annotated 1939, defines a retail sale as follows: " 'Retail sale' or 'sale at retail' means a sale for any purpose other than for resale in the form of tangible personal property, . . . " The terms "wholesale sale" or "sale at wholesale" are not defined by the statute, but we find the following under Section 73-1302, *supra:* " 'Wholesaler' or 'jobber' means any person who sells tangible personal property for resale and not for consumption by the purchaser."

Under (d)1 of section 73–1303, it is provided that when a person is engaged in the business of selling tangible personal property at both wholesale and retail, the retail rate, that is, the two per cent, shall be applied only to the gross proceeds of sales made other than at wholesale, provided the merchant's books are kept in such a manner as to show separately the gross proceeds of sales of each class. In the case at bar, there is no contention on the part of defendants that the books of the plaintiff were not kept so as to show the proceeds of sales of each class.

From the various provisions of the statute, it seems to be apparent that there are many retail sales made which are not taxable as such. Casual sales are not taxed. Section 73–1302. Those engaged in mining, timbering, etc., are not taxable on a retail sale basis. Section 73–1303(c)1. Restaurants, hotels, etc., retailing articles in a cooked or prepared form, (d)1, are assessed under (e) at one per cent. Nor may a retailer be taxed for a transaction unless it in fact constitutes a retail sale. (d)1. The question at issue is: Were the sales made by plaintiff to the contractors sales at retail? It is conceded that all the various items of personal property sold by plaintiff to the contractors were for use and were used in construction for others by the contractors. If the use and placement of this personal property in the various structures and buildings by the contractors constitute a resale of the property, and the contractors themselves were not the ultimate consumers, the plaintiff's sales were not at retail, and were not subject to the tax assessed.

Whether or not a sale to a contractor, under the conditions mentioned, constitutes a sale at retail is a troublesome question, and one upon which the courts are fairly well divided.

This court, in *Moore* v. *Pleasant Hasler Const. Co.*, 50 Ariz. 317, 72 Pac. (2d) 573, opinion by Justice Ross,

concurred in by Chief Justice McAlister, Justice Lockwood dissenting, reviewed the authorities, and held that the contractors under these conditions purchased for resale, were not consumers, and that the contractor was required to pay the two per cent retail tax. On rehearing, in 51 Ariz. 40, 76 Pac. (2d) 225, opinion by Chief Justice McAlister, concurred in by Justice Lockwood, Justice Ross dissenting, it was held that chapter 2, Section 2, First Special Session, Laws of 1937, appearing as Section 73–1303(h), amending the original law by imposing a tax on the business of contracting, must be accepted as a legislative construction that the provisions of subsection (d) of Section 73–1303 were inapplicable to contractors. While the latter opinion holds that no tax on the basis of retail sales may be imposed on contractors, it does not hold nor decide that a contractor who buys tangible personal property for use, and actually used, in construction, is not buying for resale. Neither is it held that the contractor is the consumer. The original opinion, therefore, insofar as its reasons and conclusions are concerned with the question before us, still stands. As we read the opinion, the effect of the second decision is that regardless of the source of the income, whether from retail sales or otherwise, the contractors were not taxable until the amendment of 1937, and thereafter only on the basis of one per cent.

We, therefore, face the present inquiry with a ruling of this court that contractors are not ultimate consumers and that the purchase and placement of tangible personal property in structures by contractors, under contracts for others, constitute a resale of such property. It is true that we have a right to overrule such a holding, and it is our duty to do so if cogent reason exists for the abolishment of the announced rule. An examination of the opinions of other courts on this question will be helpful in determining whether

the views expressed in the Pleasant Hasler case should remain as the guide to the construction of the statute.

The supreme court of Michigan, in *Boyer-Campbell Co.* v. *Fry*, 271 Mich. 282, 260 N. W. 165, 171, 98 A. L. R. 827, considered the effect of a definition for retail sale which, like ours, defined a retail sale as one other "than for resale in the form of tangible personal property." The court said:

"The statute imposes a tax upon that which is consumed and used and exempts only that which is sold for resale; the basis of classification is the disposition of the goods made by the buyer, not the character of the business of the seller or buyer."

The position of the seller that sales to manufacturers of tangible personal property, which entered into and became an ingredient or component part of the tangible personal property which was manufactured and produced for sale, were not taxable, was sustained. The effect of the decision was that when the manufacturer purchased from the seller, and the tangible personal property so purchased was used by the manufacturer and became a component part of the tangible property which it manufactured and sold, the original sale was for resale.

In *Bradley Supply Co.* v. *Ames*, 359 Ill. 162, 194 N. E. 272, it was held that sales of plumbing and heating supplies to contractors were not sales at retail, within the meaning of the Illinois act. That act provided, in effect, that a retail sale was the transfer of tangible personal property to the purchaser for use and consumption, and not for resale. The contractor was not the user or consumer, and the transfer of materials to the owner of the structure constituted a resale to the ultimate consumer.

Again, in *R. S. Blome Co.* v. *Ames*, 365 Ill. 456, 6 N. E. (2d) 841, 111 A. L. R. 940, the Illinois supreme court held that contractors, with respect to materials

furnished in building contracts, were subject to the same tax as persons engaged in the business of selling tangible personal property to persons for use or consumption.

In *Herlihy Mid-Continent Co.* v. *Nudelman,* 367 Ill. 600, 12 N. E. (2d) 638, 115 A. L. R. 485, the holding was that sand, cement, gravel, reinforcing steel and the like placed by contractors in structures would not constitute a sale of tangible personal property, and the contractor was not liable for a sales tax thereon. The Blome case was overruled insofar as the reasoning conflicted with the latter decision. The rule in the Bradley case, applying to plumbing fixtures, was not disturbed. This opinion was handed down in 1937. In 1942, the supreme court of Illinois, in a lengthy opinion in *Material Service Corporation* v. *McKibbin,* 380 Ill. 226, 43 N. E. (2d) 939, 944, reviewed the prior decisions, and considered and discussed the law insofar as materialmen and contractors were concerned. The ruling in the Bradley case was approved and extended to include all materials sold to contractors for use and placement under construction contracts for others. The reasoning of the Herlihy case was disavowed. The court held that in placing material or personal property in a structure, regardless of whether a fixture or commodity such as cement or gravel, the contractor was not the consumer, and that as to such sales, the materialman was not required to pay taxes. The court, in its opinion, points out that while the proceeds of sale measure the amount of the tax, this does not mean that every sale is taxable, and furthermore, that all vendors of personal property are not subject to the act or the tax. We quote:

" . . . Reference to the opinions of this court shows that it has been repeatedly said that not all vendors of personal property are subject to the act. (Citing cases.) The changes in the rule, as well as statements in some of the briefs, indicate a belief that where the

title to an item of tangible personal property is transferred by a series of transactions from one party to another and finally to an ultimate user or consumer, that if one vendor is not liable for the tax the other must be. In *Revzan* v. *Nudelman,* 370 Ill. 180, 18 N. E. (2d) 219, 222, it was said: 'In order to impose a tax on anybody under the act, the facts must bring such party within its terms, without regard to the non-liability of anybody else. To hold that one party is liable to a tax because another party is not liable, would be an anomaly in the law.' Furthermore, we are prompted to repeat that the tax authorized by the act is a tax upon certain occupations and not a sales tax. Evidence of a sale of personal property at retail is a necessary element to the establishment of a tax and is material in determining whether a person making such sale is engaged in an occupation which is subject to the tax, and the amount of the sale price measures the amount of the tax, but such elements do not form the basis for the levying of the tax. That is dependent solely upon the occupation of the one from whom the tax is exacted. (Citing cases).''

The court then considered the nature of the transaction between the contractors and the owners of the structures, and held that all material placed in buildings under contracts were, under the terms of the act, whether fixtures or other material, retail sales. Thus, when a materialman sold such material to a contractor for installation in structures, it was sold for resale, and the materialman could not be taxed on such sales. It was also held that the contractor, not being classified as a retailer under the terms of the act, could not be taxed as a retailer since such sales of material by him was only an incident to his occupation. In other words, no tax resulted from the sale of tangible personal property in connection with these transactions. The opinion calls attention to the fact that the contractor is in no sense the user or consumer of such material. He buys not for his own use or purpose but to transfer the

personal property so purchased to others. The court concludes:

"The user or consumer contemplated by the statute is the ultimate user or consumer who will use the articles as long as they last, or until he desires to do away with them. Bradley Supply Co. v. Ames, *supra;* Revzan v. Nudelman, *supra.* The nonliability for an occupational tax, which was held in the Bradley case, *supra,* to cover materialmen, whose occupations were selling plumbing supplies, is sustained and the rule announced there is held to extend to and include all materialmen when engaged in the business of selling building materials and supplies to contractors under the facts shown in the stipulation."

It will be observed that this decision sustains the views of this court respecting what constitutes a retail sale, as announced in the first Pleasant Hasler case. It also sustains the conclusion expressed in the majority opinion of the court on rehearing, to the effect that since contractors were not classified under the law until the 1937 amendment, they were not subject under the act to a tax based upon retail sales or otherwise.

Other cases which hold that contractors, in placing personal property in structures under contracts for others or making sales of such personal property, under acts similar to ours, are: *Wiseman* v. *Gillioz,* 192 Ark. 950, 96 S. W. (2d) 459.; *Bigsby* v. *Johnson,* Cal. Sup., 99 Pac. (2d) 268. Perhaps the greatest number of cases are contrary to this rule. The following decisions hold under Excise Revenue Acts, most of which differ in some respects from ours, that the contractor is the consumer, and that the merchant who sells tangible personal property to the contractor is required to pay the regular retail tax: *Albuquerque Lumber Co.* v. *Board of Revenue,* 42 N. M. 58, 75 Pac. (2d) 334; *Atlas Sup. Co.* v. *Maxwell,* 212 N. C. 624, 194 S. E. 117; *Utah Concrete Products Corporation* v. *State Tax*

*Comm.,* 101 Utah 513, 125 Pac. (2d) 408; *State* v. *Christhilf,* 170 Md. 586, 185 Atl. 456; *City of St. Louis* v. *Smith,* 342 Mo. 317, 114 S. W. (2d) 1017.

■ It is our view that the Illinois rule as finally announced and determined in Material Service Corporation v. McKibbin, *supra,* is the correct one to apply in construing our statute. Such a holding will be consistent with the prior rulings of this court in the Pleasant Hasler cases, and in *Moore* v. *Arizona Box Co.,* 59 Ariz. 262, 126 Pac. (2d) 305. We accordingly hold that where a merchant sells tangible personal property to a contractor for use of and used by the contractor in construction for others, such sale is a sale for resale and is not taxable.

■■ The second question for determination must be answered in the affirmative. We see no merit to appellant's contention that these sales involve or constitute a burden on interstate commerce. It is true that a merchant who resides without the state of Arizona may through interstate commerce take an order and sell and ship to a resident of this state goods from another state without the payment of a tax. *McLeod* v. *J. E. Dilworth Co.,* 322 U. S. 327, 349, 64 Sup. Ct. 1023, 1030, 88 L. Ed. 1304, 1319. In that respect, the foreign merchant may have some advantage of the local merchant. But the law is a revenue measure for the privilege of doing business within the state. The law operates equally among those who are subject to the jurisdiction of the state. That some merchant without the jurisdiction may have some advantage thereby is something over which the court has no control. Only the legislative branch could correct this apparent inequality.

■■ Under the agreed facts, the sales were made in Arizona and are, therefore, taxable. If the transactions were in interstate commerce, under the terms of Section 73–1308, Arizona Code Annotated 1939, no tax

based on such sales could be levied or collected. But obviously they are not in interstate commerce, within the meaning of the commerce clause. It has been repeatedly held that sales taxes do not unconstitutionally burden interstate commerce as applied to sales under the circumstances shown here. It seems to be well settled that general sales taxes or privilege taxes based on sales do not unconstitutionally burden interstate commerce in the following situation: Where the seller solicits or enters into a contract of sale within the state and the seller maintains a place of business within the state, even though the article cannot be purchased within the boundaries of the taxing jurisdiction, and it is necessary to transport the property in interstate channels from without the boundaries of the taxing jurisdiction; provided, however, that the delivery of the merchandise is made to the purchaser in the taxing jurisdiction either directly from such extrastate source or through the offices of the seller within the taxing state; and provided further, that no congressional enactment or policy is offended. *McGoldrick* v. *Berwind-White Coal Co.,* 309 U. S. 33, 60 Sup. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876, and note p. 900.

It would serve no useful purpose to discuss the various reasons why a transaction of this character does not come within the interstate rule. No cases were cited by appellant in support of its claim that the transactions mentioned were in interstate commerce, nor is any congressional enactment or policy involved.

The late case of *Montgomery Ward & Co.* v. *State Comm. of Revenue and Taxation,* 156 Kan. 408, 133 Pac. (2d) 1008, deals with the precise question we now have for consideration. In that case, the supreme court of Kansas rejected a similar contention on behalf of the taxpayer. There, as here, the taxpayer was a foreign corporation maintaining a place of business in Kansas. It sold to residents of the state merchandise

which was shipped from without the state either directly to the customer within the state or by relay through the seller's office in Kansas. Under a similar statute to ours, it was held that these were taxable transactions. They were Kansas sales within the meaning of the statute, and not interstate commerce transactions.

The plaintiff, therefore, is liable for the taxes based on these sales unless the state is estopped.

We have examined very carefully all of the cases called to our attention by appellant on the question of estoppel. Only one case is actually in point as sustaining appellant's contention. *La Societe Francaise, etc.,* v. *California Employment Comm.,* 56 Cal. App. (2d) 534, 133 Pac. (2d) 47. In that case, the California court held that where the commission had informed the employer it was not subject to the unemployment insurance tax, and for that reason it collected no tax from its employees, the commission was estopped from collecting that portion of the tax which, under the law, the employer was required to collect from employees. The employer was merely a collecting agent for that part of the tax which the act contemplated should be borne by the employees. This is somewhat similar to the situation we had before us in the late case of *General Petroleum Corporation* v. *Smith,* 62 Ariz. 239, 157 Pac. (2d) 356, 357. In that case, however, the tax itself was not involved but only the penalty. We indicated that as to penalties the court might, in the exercise of its equitable power, abate tax penalties under meritorious conditions. Under the law involved in the General Petroleum case, the appellant was held to be, in effect, the tax collector. Here the appellant is in no sense the tax collector. It is the taxpayer. True, it has the right to pass on the taxes to the purchaser, but it is not under any statutory duty to do so. In that case, we had a "Motor Vehicle Fuel Tax" with which to deal. Here an "Excise Revenue Act."

■ This court has never held that, insofar as a tax was concerned, the state may be estopped from the collection of a legal tax by reason of the action of any of its officers. The general rule is that the state will not be estopped in the collection of its revenues by an unauthorized act of its officers. In the matter of collecting revenues, the state is acting in its governmental or sovereign capacity, and ordinarily there can be no estoppel. Were this not the rule the taxing officials could waive most of the state's revenue. *Bennetts, Inc., v. Carpenter,* 111 Colo. 63, 137 Pac. (2d) 780; *Central Power & Light Co.* v. *State,* Tex. Civ. App., 165 S. W. (2d) 920; *Trustees of Phillips Exeter Academy* v. *Exeter,* 90 N. H. 472, 27 Atl. 569; *One Hundred Second Cavalry Officers' Club* v. *Heise,* 201 S. C. 68, 21 S. E. (2d) 400; *Lovett* v. *City Treasurer of Detroit,* 286 Mich. 159, 281 N. W. 576; *State* v. *Illinois Cent. R. Co.,* 200 Minn. 583, 274 N. W. 828, 275 N. W. 854; *O. D. Jennings & Co.* v. *Reinecke,* D. C. 19 Fed. Supp. 197; *John M. Parker Co.* v. *Commissioner of Internal Revenue,* 5 Cir., 49 Fed. (2d) 254; *Board of County Com'rs* v. *School Board,* 139 Kan. 457, 32 Pac. (2d) 812; *State Tax Comm.* v. *Martin,* 57 Ariz. 283, 113 Pac. (2d) 640; 31 C. J. S., Estoppel, § 147, p. 434. The Constitution, Art. 9, Sec. 1, provides that the power of taxation (which must of necessity include collection) "shall never be surrendered, suspended, or contracted away." To hold that the commission by regulation may waive taxes which the law required to be imposed would be violative of this provision.

The regulation of the tax commission, upon which appellant bases its plea of estoppel, was wholly unauthorized. The tax commission cannot by any rule or regulation exempt a taxpayer from the payment of a tax unless such authority has been specifically granted to it by the legislature. Here no such authority exists.

■ Appellant has argued at length the administrative and legislative interpretation of the act. Our

views as to the effect and meaning of the law make it unnecessary to consider these phases. We may say, in passing, that since chapter 16, laws of 1943, regular session, directing that no taxes be collected on materials sold to contractors under the conditions existing here, has been held unconstitutional by this court in *Martin* v. *Moore,* 61 Ariz. 92, 143 Pac. (2d) 334, we give it no effect whatsoever. While there is some authority to the contrary, *Swift* v. *Calnan,* 102 Iowa 206, 71 N. W. 233, 37 L. R. A. 462, 63 Am. St. Rep. 443, we fail to see how a void enactment can evidence a legislative intent or aid us in a construction of the statute. The general rule appears to be that an unconstitutional statute is in reality no law and is wholly void, and is as inoperative as if it had never been passed. "Such a statute leaves the question that it purports to settle just as it would be had the statute not been enacted." 11 Am. Jur. 827, 828, Sec. 148, Const. Law.

This brings us to the final question, the power of the court to enjoin an assessment or levy of the tax on merchandise sold to contractors.

Whether an injunction may issue in this case depends upon the effect of the following provisions of the 1939 statutes:

Section 26–104 prohibits the issuance of an injunction " . . . to prevent the execution of a public statute, by officers of the law, for the public benefit."

Section 73–841, insofar as pertinent here, reads as follows:

"No person upon whom a tax has been imposed under any law relating to taxation shall be permitted to test the validity thereof, . . . unless such tax shall first have been paid . . . . No injunction shall ever issue in any action or proceeding in any court against this state, or against any county, municipality, or officer thereof, to prevent or enjoin the collection of any tax levied."

The Excise Revenue Act provides that the taxes levied under this article shall be due and payable monthly, and the taxpayer is required on or before the 15th of each month to make out a return showing the amount of the tax for which he is liable for the preceding month, and file the same with the commission. Annual returns are also required. The commission for good cause may extend the time for making any return required, but not beyond the 15th day of the second month next succeeding the regular due date of the return. Sec. 73–1314.

The taxpayer having made a return and if not satisfied by the assessment made by the commission upon him for any month, is required to pay the amount of such assessment before the delinquent date, under written protest. He is entitled to hearing. Within twenty days after the commission's final determination, the taxpayer may bring an action or suit to recover any part of the tax claimed to be illegally collected, with interest at 6 per cent per annum. "No injunction shall be awarded by any court or judge to restrain the collection of the taxes imposed by this article or to restrain the enforcement of this article." Section 73–1318.

We have had occasion in several cases to consider and apply the provisions of Section 26–104, which we have quoted. The first of these was *Corbin* v. *Rodgers,* 53 Ariz. 35, 85 Pac. (2d) 59, 62. It was there held that an injunction would not lie to prohibit officers from enforcing certain provisions of the penal gaming statute. We pointed out that the provisions had been taken from California, and that the rule of construction there was as follows:

" . . . In these cases the court states, in substance, that where the validity of the law whose execution it is sought to enjoin is not attacked, or when even though attacked, its validity is beyond question and the power of the officer to enforce it, if valid, is plain the court

has no jurisdiction to issue an injunction restraining its enforcement by the proper officers."

In *Hislop* v. *Rodgers,* 54 Ariz. 101, 92 Pac. (2d) 527, 535, the question involved was the power of the court to enjoin city officers from abating a public nuisance under the provisions of the city charter. It was held that inasmuch as the acts of the officers against whom the restraining order was issued constituted an attempt to enforce a public statute for the public benefit, the court was without jurisdiction to issue an injunction. We quote:

"Since the ordinance in question was undoubtedly a constitutional and valid one, and since the petitioners were attempting to enforce it in a manner authorized by law, injunctive process was not available in order to prevent their acts. . . . "

In *Francis* v. *Allen,* 54 Ariz. 377, 96 Pac. (2d) 277, 126 A. L. R. 190, the action was to enjoin the superintendent of the highway patrol and other state officials from attempting to enforce the provisions of chapter 50, regular session, laws 1939, relating to motor vehicle transportation. We held that since the act was constitutional in all respects, an injunction preventing its enforcement could not be issued.

The last case in which the section was considered is *Hilkert* v. *Canning,* 58 Ariz. 290, 119 Pac. (2d) 233, 236. The superior court had issued an injunction enjoining the state board of accountancy and the attorney general from holding a hearing to consider whether a certificate issued to the plaintiff should be revoked as provided under the terms of the act establishing the state board of accountancy, Sections 67–601 to 67–611, Arizona Code Annotated 1939. We said:

"If the statute is valid, and we have no doubt that it is, then, of course, the board of accountancy may not be enjoined from proceeding to perform its duty. Section 26–104 prohibits the issuance of an injunction 'to

prevent the execution of a public statute, by officers of the law, for the public benefit.' "

It will be seen from the foregoing decisions that the precise question we have before us has not heretofore been considered by the court. Here there is no question as to the validity of the statute, nor of the right of the commission to enforce the statute. The question here is: May the commission, under the pretense of executing the statute, collect taxes which are not authorized by the terms of the act? Regardless of the statute, it has always been the law that courts will not interfere to prevent the execution of a public statute by officers of the laws. The act is merely an affirmation of the general rule on the subject. Here the injunction is sought not to prevent the execution of the statute but to prohibit wrongful action on the part of the defendants under the guise of its enforcement or execution. Notwithstanding the statute, we believe it to be the law that if public officers exceed their authority and resulting injury cannot be adequately provided by proceedings at law, equity will enjoin the commission of such illegal act. *City and County of Denver* v. *Pitcher,* 54 Colo. 203, 129 Pac. 1015.

While it is true that courts will not interfere by injunction where officers are acting in the execution of a public statute, they may be enjoined from acts which are beyond their power. *Fritchman* v. *Athey,* 36 Idaho 560, 211 Pac. 1080; *Town of Afton* v. *Gill,* 57 Okl. 36, 156 Pac. 658.

In *Brock* v. *Superior Court,* 11 Cal. (2d) 682, 81 Pac. (2d) 931, the supreme court of California considered the effect of a like statute. It was there held that if it were determined after trial that the officer was acting illegally, then, notwithstanding the statute, the court would have power to issue an injunction. In the late case of *Agricultural Prorate Comm.* v. *Superior Court,* 31 Cal. App. (2d) 518, 88 Pac. (2d) 253, 255, where

claim was made that the superior court was without jurisdiction to issue an injunction against the execution of a public statute, the court said:

"The second point, that the order of the respondent court violated certain Code provisions is not well taken, for if the officers were in fact acting illegally, it is, as held in the foregoing case, within the power of the court to restrain their acts." Citing in support of the statement Brock v. Superior Court, *supra*.

We think, notwithstanding the statute, that the court has jurisdiction to issue an injunction in a case like this. *First Industrial Loan Co.* v. *Daugherty* (Cal. App.), 148 Pac. (2d) 439, 441:

" . . . It needs no statutory declaration to vest the court with jurisdiction, and such jurisdiction cannot be limited or curtailed by legislative fiat, to review an order of an administrative officer or board, and, if the order be in excess of the power of such officer or board, to annul the same and to enjoin its enforcement. . . ."

It is our view that, as the case was submitted to the trial court upon the stipulation and plaintiff's complaint, the allegations of which were admitted by the motion to dismiss, plaintiff is entitled to equitable relief. Its complaint discloses that it has no plain, speedy nor adequate remedy at law. We know from what we have set forth of the statute that unless the action of the commission in attempting to collect taxes on sales to contractors is enjoined, the result would be a multiplicity of suits. Under the law which requires monthly returns and similar monthly assessments by the commission, payment under protest and an action for the recovery each month would hardly constitute an adequate remedy at law.

What we have said applies generally to the provisions of Sections 73–841 and 73–1318. It will be noted, however, that these last mentioned sections, which prohibit injunction against taxes imposed by law, apply only when there is an actual tax payable

either by levy, as pointed out in *State* v. *Cull,* 32 Ariz. 532, 260 Pac. 1023, or by operation of law. Thus, as held in *State* v. *Cull,* an injunction will lie before the levy of the tax. If, however, no tax results from the law, but there is an attempted collection of the tax which is claimed to result, when in fact there can be no tax, an injunction may issue, as held by us in *Nelssen* v. *Electrical Dist. No. 4,* 60 Ariz. 145, 132 Pac. (2d) 632.

Since we have held that no taxes result from sales of merchandise to contractors, under the circumstances as shown here, there was no statutory levy of a tax. The attempt of the commission to collect a tax which does not exist is without authority of law, beyond its powers, is illegal and a proper subject of injunction, the necessary elements for injunctive relief having been shown.

In so holding, we do not mean to depart from the statements made in *Santa Fe Trail Transp. Co.* v. *Bowles,* 62 Ariz. 177, 156 Pac. (2d) 722. In effect, we said in that case, the right afforded by the statutes to pay the taxes under protest and recover is in most cases an adequate remedy. We do not mean to say here that an injunction will lie in all cases where a tax is illegally imposed. If the payment of the tax under protest and suit for recovery constitutes, as it ordinarily does, an adequate remedy at law, that course must be followed. Here, however, as we have pointed out, unless the tax is enjoined the result will be a multiplicity of suits, and, therefore, the remedy at law is not adequate. Furthermore, in the Bowles case, the facts were entirely dissimilar. There an annual tax only was involved. There, too, under the law which was being considered, every motor vehicle registered for operation was presumptively subject to the tax. Here the law itself specifically provides that where property is sold for resale, there shall be no tax. The law involved

in the Bowles case made no exception for vehicles engaged in interstate commerce.

In accordance with the views which we have expressed, the judgment of the lower court is affirmed as to that portion of the tax assessed based upon gross sales by plaintiff within the state of merchandise or materials manufactured and located without the state and delivered from without the state either directly, or through the medium of plaintiff, to purchasers within the state, and is reversed and defendants enjoined from assessing or attempting to levy or assess the tax against plaintiff based upon the gross sales by it of materials to contractors for use and used in construction for others.

LaPRADE, J., concurs.

STANFORD, C. J. (Dissenting).—Since I am disagreeing, in the main, with the majority opinion of this court, it is proper I should express my dissent.

I am in accord with the opinion that the equitable doctrine of estoppel is not applicable, since in the collection of the public revenues, the executive officers of the state cannot adopt rules or regulations contrary to law and thereby prevent the state from collecting its revenue due under our statute.

I also agree that the receipts from the sale of merchandise made by merchants within the state but delivered from without the state directly to the purchaser are taxable.

The main issues involved and about which I disagree are the meaning of the words ''sale at retail'' as referred to in our Excise Revenue Act, and whether a taxpayer may, under that act, invoke the equitable powers of the court to test the validity of the tax imposed by securing an injunction restraining the collection of same.

The appellant is engaged in the business of making sales of "tangible personal property" to, among others, contractors licensed as such under the Excise Revenue Act.

The Arizona State Tax Commission found the appellant liable for an unpaid tax under the Excise Revenue Act in the amount of $36,270.03 on its gross receipts for materials sold contractors and the commission demanded payment for the amount, and the appellant, without first paying the tax and protesting and following the procedure provided in the act, petitioned the trial court for a restraining order which was granted against the enforcement of the law.

The trial court, after hearing, held the tax unlawful in part and made the restraining order permanent.

The majority opinion herein states:

"Whether or not a sale to a contractor, under the conditions mentioned, constitutes a sale at retail is a troublesome question, and one upon which the courts are fairly well divided."

The appellant sells plumbing supplies and other articles used by the contractor and fabricated into a building or other construction. If this sale to a contractor is a "sale of retail" within the meaning of the statute, it is taxable, otherwise not. Section 73–1302, Arizona Code Annotated 1939, defines sale as follows:

" 'Retail sale' or 'sale at retail' means a sale for any purpose other than for resale in the form of tangible personal property, . . . "

Certainly a contractor in making a purchase from the appellant of a bath tub, pipes and plumbing supplies does not acquire such material for "resale in the form of tangible personal property." He acquires those articles to fit in the construction of buildings and not to resell, but as necessary material in performing his work as a contractor.

The contractor does not even sell his completed work, nor is he taxed as on a sale.

In the case of *Moore* v. *Pleasant Hasler Const. Co.,* 51 Ariz. 40, 76 Pac. (2d) 225, this court on rehearing held that contractor was not liable on the completed work of his contract as a "sale at retail." He was taxed for the business of contracting, not being engaged in the business of selling.

In the case of *Martin v. Moore,* 61 Ariz. 92, 143 Pac. (2d) 334, 335, C. M. Martin, a wholesaler of supplies and merchandise, commenced an action for declaratory relief in the superior court against the members of the tax commission alleging that a controversy existed between him and the tax commission as to the correct construction of certain provisions of the Excise Revenue Act, and asking that the court determine such controversy. The trial court held in main: ·

" 'Sales by wholesalers, retailers, dealers, or others, to persons, firms, corporations, or others, licensed to do business under the Excise Revenue Act of 1935, as amended, to contractors, licensed and doing business under the Excise Revenue Act, as amended, are taxable as a retail sale to a consumer, regardless of whether the goods, supplies, merchandise and equipment, or articles sold are shovels, hammers, squares, etc., or cement, lumber, or building material fabricated into the construction by the contractor.' "

Our legislature was then in session and when the trial court rendered its judgment it enacted, over the governor's veto, Chapter 16 of the Laws of 1943, to the effect that:

" . . . No excise or sales tax shall be collected on materials heretofore or hereafter sold to a contractor and by him incorporated into work constructed by him under contract, and on which he has paid a tax under the excise revenue act."

Two paragraphs of the opinion of this court are pertinent:

"The question for us to decide is the validity of this legislation. If it is effective, it not only invalidates and sets aside the court's judgment, which both parties hereto admit was correct when rendered, but establishes the law for the future.

.    .    .    .    .    .    .    .    .    .

"The action, after the enactment of Chapter 16, became one in the nature of an action for a declaratory judgment as to whether said chapter is constitutional or not. We think clearly that said chapter is unconstitutional."

·As to the other question to which I dissent, our Sec. 73–1318, Arizona Code Annotated 1939, under Excise Revenue Act, says:

"No injunction shall be awarded by any court or judge to restrain the collection of the taxes imposed by this article or to restrain the enforcement of this article."

This ban on injunctions is in addition to an express law under the heading mentioned to prevent interference with our method of deriving revenue for the maintenance of our government.

If every taxpayer resorted to injunctive relief, it could be seen that our government would go without finances while the courts took action. This case was filed in the superior court of Maricopa County September 27, 1943, and is just now being decided in this court.

Notwithstanding the holdings of other states, I am satisfied it is the law of this state that the taxes levied against appellant should be paid and that the hands of the judiciary of Arizona should never be lifted to support an injunction to stay the payment of such taxes to our sovereign state.