K & L DISTRIBUTORS, INC., a Washington corporation, Plaintiff,

v.

STATE OF ALASKA, Alcoholic Beverage Control Board of the State of Alaska; and Commissioner of the Department of Revenue, Defendants.

No. J-4-60.

United States District Court
D. Alaska, at Juneau.
June 15, 1960.

Albert M. Franco, of Franco & Bensussen, Seattle, Wash., Peter J. Kalamarides, Anchorage, Alaska, and R. J. McNealy, of McNealy, Merdes & Camarot, Fairbanks, Alaska, for plaintiff.

Ralph E. Moody, Atty. Gen., Alaska, by Gary Thurlow, Deputy Atty. Gen., for defendants.

HODGE, District Judge.

Plaintiff seeks to recover by this action sums totaling $52,750 paid under protest to the Territory of Alaska and its successor, the State of Alaska, as additional license fees upon wholesale liquor licenses obtained by it for the years from 1956 through 1959; and to enjoin the State and the Alcoholic Beverage Control Board from claiming further license fees alleged to be excessive. Defendant has answered setting up a counterclaim for license fees alleged to be due for the years 1956 through 1958 and for an "undetermined period" preceding 1956, in excess of $59,500. Both parties have moved for summary judgment in their favor, and the case is submitted for determination of the issues of law involved.

Jurisdiction of this court is obtained by reason of diversity of citizenship (28 U.S.C.A. § 1332).

Statement of Facts

The admitted facts as established by the pleadings and pre-trial order may be summarized as follows:

Plaintiff is a corporation organized under the laws of the State of Washington and has been engaged in the wholesale liquor business in the Territory (now State) of Alaska for the years 1952 to date. For the years 1952 through 1957 plaintiff secured a general wholesale license for its Seattle office and paid a graduated tax thereon for a total of $5,000 for each of such years and was also issued a general wholesale license for distributing points at Anchorage and Fairbanks and paid the sum of $500 for each place. No graduated tax was paid or required for these years on the Anchorage or Fairbanks locations. Plaintiff was also issued a wholesale malt beverage and wine license for its distributing point at Juneau for the years 1957 and 1958.

On or about December 1, 1957, plaintiff applied for issuance of licenses as in prior years but was notified by the Alaska Liquor Control Board that a graduated fee for a general wholesale license must be paid on the Anchorage and Fairbanks distributing points. In order to secure such licenses plaintiff paid additional fees for the years 1956 and 1957 and later paid additional fees for 1958 and 1959 for a total of $52,750, all of which were paid under protest, and separate licenses were issued for each distributing point. From 1952 through 1956 all licenses were issued by the Clerks of the District Court upon order of the District Judge. In 1957 and 1958 licenses were issued by

the Tax Commissioner upon orders of the Liquor Control Board. Commencing in 1959 licenses have been issued by the Director of the Alcoholic Beverage Control Board. During the years mentioned, plaintiff obtained a provisional license and filed affidavits and paid a graduated fee upon all sales to Alaska customers emanating from Seattle, and up to 1957 such were accepted by the officers of the Territory. It is conceded that sales to Anchorage customers exceeded $500,000 per annum from 1952 through 1959 and that sales to Fairbanks customers exceeded that sum from 1956 through 1959. As to the Juneau license, it was stipulated that the annual sales exceeded the minimum fee prescribed by statute.

During this period there were no rules and regulations of the Alcoholic Beverage Control Board governing the issuance of licenses, all of which was governed by the statutes hereinafter referred to.

At Fairbanks and Anchorage plaintiff maintained personnel and warehouses from 1952 to date, and at Juneau plaintiff has maintained personnel since 1957.

### Statutes Involved

In its interpretation of the statutory requirements for obtaining wholesale licenses the State relies principally upon the provisions of Sec. 35–4–16(C) A.C. L.A.1949 as amended, and Sec. 35–4–23 A.C.L.A.1949 as amended.

Sec. 35–4–16 was originally enacted by the Territorial legislature as Sec. 6 of Chapter 78, S.L.A.1937, being an Act "To provide for the manufacture and sale of intoxicating liquors in the Territory of Alaska." This section is entitled "Qualifications of Licensees." Subsection (C) provided that any distiller, brewer or wholesaler whose plant or principal place of business is outside of the Territory but whose products are sold in the Territory shall be required to obtain a wholesale license for the sale of his products in the Territory, "and a separate license shall be required for each wholesale distributing point within the Territory." This section was amended by Chapter 131, S.L.A.1957, by adding the words (with relation to the products sold) "directly, by any of the foregoing," so that the statute as it existed on the effective date of the 1957 amendment, approved March 29, 1957, reads as follows:

"§ 35–4–16. Qualifications of licensees. * * * (C) Non-resident distiller, brewer or wholesaler. Any distiller, brewer or wholesaler, whose plant or principal place of business is outside of the Territory, but whose products are sold *directly, by anyone* [sic] *of the foregoing*, in the Territory, shall be required to obtain a Wholesale License for the sale of his products in the Territory, and a separate license shall be required for each wholesale distributing point within the Territory. * * * "

The portion italicized indicates the 1957 amendment.

Sec. 13 of the 1937 Act entitled "Classification of Licenses" (Sec. 35–4–21 A.C. L.A.1949) set up three classes of wholesale licenses, under subsection (H):

(1) a general wholesale license, giving to the holder thereof the right to sell intoxicating liquors, including malt beverages and wines in the original package and wine in bulk, in quantities of not less than five wine gallons, to holders of licenses under the Act, but not to the consumer, as to which a license fee of $500 was provided;

(2) a wholesale hard and distilled liquor license, giving to the holder thereof the right to sell hard and distilled liquors in the original packages of not less than five wine gallons to holders of licenses under the Act but not to the consumer, for which a fee of $500 was provided; and

(3) a wholesale malt beverage and wine license, giving to the holder thereof the right to sell malt beverages and wine in the original packages and malt beverages and wine in bulk in quantities of not less than five wine gallons to holders of licenses under the Act but not to the consumer, as to which a fee of $100 was provided.

Only subsection (3) of subsection (H) relating to the wholesale malt beverage and wine license contained this clause: "A Wholesale License shall be required for each distributing point." No such provision was made as to the other two wholesale licenses.

All licenses under this Act were issued by the Clerk of the District Court, in compliance with the orders of the Judge, and all applications for licenses made to the Clerk.

This subsection was amended in 1941 (Chapter 75 S.L.A.1941) to substitute as to the general wholesale license fee (Subsection (1)) and the wholesale malt beverage and wine license (Subsection (3)) a graduated fee based upon the "business transacted during any year" instead of the flat fee,[1] but no change was made with respect to the requirement that a wholesale license be required for each distributing point, being still limited to subsection (3).

In 1957 the Territorial legislature enacted a new code for the licensing and regulation of the liquor industry (Chapter 131, S.L.A.1957), providing for licenses to be issued by the Tax Commissioner under orders of a Board of Liquor Control.[2] By this Act Section 35-4-21 (H) was re-enacted, providing for the first time as to a general wholesale license (subsection (1)), that "A Wholesale License shall be required for each distributing point," and eliminating the previous provisions for a "Wholesale Hard and Distilled Liquor License" (subsection (2)), retaining the graduated fee as to

the other two types of wholesale license. The pertinent parts of this section, relating to a general wholesale license, as then constituted, read as follows:

"A General Wholesale License shall give· to the holder thereof the right to sell intoxicating liquors, including malt beverages and wines, in the original package, and wine in bulk, in quantities of not less than five wine gallons to the holders of licenses under this Act, but not to the consumer. All liquor requiring Internal Revenue strip stamps must have such stamps intact on the package. *A Wholesale License shall be required for each distributing point.* (A) *The* General Wholesale License Fee *schedule* shall be as follows: * * * ." (Amendments italicized; deleted language in parentheses.)

It should be noted that the 1957 legislature deleted the previous provision for a separate license for each distributing point from the requirement as to a Wholesale Malt Beverage and Wine License, (Sec. 35-4-21 (H) (2)), even as they inserted it as to the General Wholesale License (subsection 1) so that this subsection as then constituted read as follows:

"(2) A Wholesale Malt Beverage and Wine License shall give to the holder thereof the right to sell malt beverages and wine in the original packages and malt beverages and wine in bulk in quantities of not less than five wine gallons to holders of licenses under these regulations but not to the consumer. Malt Bever-

---

1. As to the General Wholesale License: "Upon the total amount of business transacted during any year: $500.00 as a minimum license fee, to accompany the application, and in payment of the fee for the first $50,000.00 of business transacted, and, in addition thereto, on the business transacted during any year," a graduated fee beginning with above $50,000 and not over $75,000, a fee of $250.00, and ending with above $500,000, a fee of $5,000.00.

 As to the Wholesale Malt Beverage and Wine License: "On the total amount

of business transacted in any year: $100.-00 as a minimum license fee, to accompany the application, and in payment of the fee for the first $10,000.00 of business transacted, and, in addition thereto, on the business transacted during any year," a graduated fee beginning with above $10,000 and not over $25,000, a fee of $250.00, and ending with above $400,000, a fee of $5,000.00.

2. Following the decision of the Circuit Court of Appeals in the case of Bordenelli v. United States, 233 F.2d 120, 16 Alaska 185.

ages and Wine License Fee shall be as follows: * * * ."

In 1959 the State legislature enacted a further new code relating to intoxicating liquors, providing for the issuance of licenses by the Director of ·a newly established Alcoholic Beverage Control Board (Chapter 197, S.L.A.1959). By this Act, Sec. 35–4–21(H) was re-enacted in the same language as contained in the 1957 Act.

In 1941 the Territorial legislature added a new section to Chapter 78, S.L.A. 1937, providing for the issuance by the Clerk of the District Court of a "provisional license" and providing that the licensee shall make an affidavit showing the amount of business done during the preceding year "under said respective licenses and the points and establishments from which such business was done," to be filed with the Clerk of the Court, and for payment of the graduated license fee at the time of filing the affidavit. Chapter 75, S.L.A.1941; Sec. 35–4–23, A.C.L.A.1949.

This section was amended by the Act of 1957 to provide for the issuance of such provisional license by the Tax Commissioner and providing that the affidavit required show the amount of business done during the preceding year by the licensee "under his respective license and the locations and the establishments from which such business was done." The pertinent parts of this section as it existed in 1957 read as follows:

"Sec. 35–4–23. Provisional License: Affidavit and Payment of Fees. The *Tax Commissioner* shall issue *only* a provisional license upon the payment of the minimum fees for *the licenses* mentioned in section 35–4–21 H(1) (2) herein and not later than February 15th of each year following that for which any license has been issued to a licensee, said licensee shall make an affidavit showing the amount of business done during the preceding year *under his respective license and the locations and establishments from which such business was done,* which shall be

filed with the *Tax Commissioner.* The licensee shall pay to said *Tax Commissioner* the license fees accrued during such preceding year at the time of filing such affidavit. * * * " (Amendments italicized.)

In the 1959 Act (Chapter 197, S.L.A. 1959) this section as thus amended was re-enacted without change, except that the Director of the Alchoholic Beverage Control Board was substituted for the Tax Commissioner and except that the words "said licensee shall make an affidavit" showing the amount of business done during the preceding year were changed to read "said licensee shall make an affidavit or affidavits" showing the amount of business done.

## Conclusions

 Resort may be had to the legislative history of these statutes, evidenced by subsequent enactments and amendments, as an aid to their interpretation and application. 50 Am.Jur., Statutes, Sec. 337, p. 328; Sec. 354, p. 354. It is clear from the above analysis that prior to 1957 there was no intent of the legislature to require affidavits and collection of the graduated tax as to each distributing point with respect to the general wholesale license. Section 35–4–16(C) did require a separate license for each wholesale distributing point but not necessarily a separate general wholesale license. This section must be read in connection with Section 35–4–21(H) which actually prescribed the type of license and fee for each separate license, requiring only the $500 fee for each wholesale hard and distilled liquor license, which was apparently considered regulatory, and making no provision for a separate license for each distributing point except as to the malt beverage and wine license. Nothing to the contrary is indicated by Section 35–4–23.

Support for this construction is found in the manner of the application of the statutes by the Clerks of Court and the Tax Commissioner who interpreted the statutes and accepted the license fees accordingly. 50 Am.Jur., Statutes, Sec.

319, p. 309. This view, sometimes referred to as "contemporaneous construction of the law," has been adopted by the previous District Court for the District of Alaska. In re Martin's Retail Liquor License, 15 Alaska 171, 177; In re Alaska Labor Trades Ass'n, 10 Alaska 472, 490.

■■ In this connection the contention of the State that the plaintiff actually applied for and was issued forms of general wholesale licenses for its Anchorage and Fairbanks distributing points on forms supplied by the Clerk and therefore should be required to pay the graduated tax thereon, is not convincing. It is the legislative intent, as clearly interpreted by the Clerks and the Tax Commissioner, rather than the form of application and license, which must govern. Even if the statutes were ambiguous, which I do not concede, the construction placed upon them by the officers or departments charged with their enforcement and administration is to be considered and given weight in construing the statutes, especially if such construction has been observed, acted upon, and acquiesced in for a considerable period of time. 82 C.J.S. Statutes § 359, p. 761.

■ It is equally clear that by repeal in 1957 of subsection 2 of Sec. 35–4–21 (H) relating to the $500 wholesale hard and distilled liquor license, and by making express provision for a general wholesale license at each distributing point, the legislature definitely departed from the previously adopted procedure; and that thereafter, beginning in 1957, separate licenses were and are required for each distributing point, upon filing of affidavits showing the volume of business done under each license and the payment of the graduated fee thereon.

■ Plaintiff contends that the 1957 Act was without effect as to it, although conceding that under the 1959 Act "it could possibly be construed that the legislature intended at that time to impose a graduated fee schedule on all licenses of a non-resident wholesaler," on account of the change of the wording of Sec. 35–4–23 from "an affidavit" to "an affidavit or affidavits"; and also by reason of the addition of the words "or licenses" to Sec. 35–4–16(C). I am unable to agree with this contention but conclude that these changes were merely intended to clarify the provisions of the 1957 Act and that the change referred to became effective with the 1957 Act.

■ Section 35–4–22 A.C.L.A., as amended by the 1957 Act, provided that all applications for licenses under the Act shall be for the period from January 1 until December 31 of the calendar year, except that provision was made for issuance of licenses for a six months period upon application (subsection (F)). It seems apparent that the legislature intended this Act to be retroactive covering the year 1957, in view of this language, an emergency clause attached to the Act, and provision for payment of the graduated fees on the amount of business done by February 15th of the following year. Section 35–4–23.

■ Plaintiff contends that to require the payment of the graduated fee at each distributing point results in double taxation. Certainly double taxation should not be permitted. But there is no double taxation unless the same property, income, or sale is taxed twice. 51 Am.Jur., Statutes, Sec. 284, p. 336; Territory of Alaska v. Sears Roebuck & Co., 79 F. Supp. 668, 12 Alaska 10. If it is the intention to charge the Seattle license of plaintiff with payment of the graduated tax on all sales in Alaska, and in addition thereto to charge the graduated tax on the same sales under the Fairbanks and Anchorage licenses, such would result in double taxation. But this is not the intention, but rather that the graduated tax be paid on the volume of business done under each license. Hence, it is not required that the affidavit under the Seattle license include the business done at Fairbanks or Anchorage, nor that the affidavits under the Fairbanks and Anchorage licenses include the business done at Seattle, but only that the affidavits cover the business done at each distrib-

uting point. This will result in additional license fees but would not be discriminatory or invalid.

■ Plaintiff also invokes the doctrine of estoppel. No estoppel runs against the State for the collection of taxes or license fees. 53 C.J.S. Licenses § 47, p. 663; Crane Co. v. Arizona State Tax Commission, 63 Ariz. 426, 163 P.2d 656, 662, 163 A.L.R. 261; Annotation 1 A.L.R. 2d 344. However, no finding of estoppel is necessary to the determination of this problem, as the issue is resolved as a matter of statutory construction.

With respect to the Juneau Malt Beverage and Wine License, there appears to be no problem as only one license was issued to plaintiff and hence the requirement as to a license at each distributing point appears to be immaterial. Under the statute plaintiff is required to pay the graduated fee for such license based upon the volume of business done annually thereunder.

An accounting may be had between the parties pursuant to stipulation to determine the amount of license taxes due from plaintiff, if any, for the years 1957 to 1959 inclusive, in accordance with this opinion, upon reapportionment of any amounts of gross sales credited to Seattle and the distributing points at Anchorage, Fairbanks, and Juneau. Plaintiff is entitled to summary judgment against the defendant State of Alaska for the amount of additional license taxes paid under protest for the year 1956 and for any excess, if such be found, of the amount of additional license taxes paid under protest for the years 1957 to 1959 over the amount found to be properly due. If, upon such accounting, there is still found to be due from plaintiff additional fees for the years 1957 through 1959, over the amount paid by plaintiff, defendant may have judgment for such difference. In case the parties are unable to agree as to such amounts within sixty days from date, and upon report to the Court, the matter will be referred to a Master for accounting and determination of the amounts severally due.

Defendant's counterclaim as to taxes claimed for the year 1956 and all years prior thereto may be dismissed.

Final judgment will be entered herein upon determination of the proper amounts of license taxes per stipulation or the report and approval of the Master, as the case may be.

Costs will be allowed to the prevailing party. No attorney's fees will be allowed except the docket fee provided by law.

Plaintiff's prayer for an injunction is denied.